THE AMERICAN EXPRESS COMPANY *v.* STACK.

COMMON CARRIERS.—WAREHOUSEMEN.—In a suit against an express company for the loss of a package by the delivery of it to the wrong person, the court declined to examine the question whether the liability of the company, under the contract, was that of a common carrier or a warehouseman, because, in either case, the company was bound to deliver to the right person.

APPEAL from the *Tippecanoe* Common Pleas.

GREGORY, J.—*Stack* sued the appellant for the non-delivery of two bonds. The defendant answered by the general

denial, with an agreement between the parties that all legal defenses could be given in evidence under it. Trial by the court; finding for the plaintiff; motion for a new trial overruled, and judgment. Motions were made and overruled to strike out portions of the depositions taken on the part of the plaintiff.

We have examined the record, and think that the action of the court, in overruling the motions to suppress, worked no harm to the defendant. The portions of the depositions objected to consist, in the main, in conversations of the plaintiff and his wife with *Eveleth*, a witness who assisted in sending the bonds from *Chicago*. These conversations do not tend to establish or contradict any material fact in dispute, in any manner affecting the merits of the case.

The evidence, which is made a part of the record, tends to show that the plaintiff enlisted as a soldier in the army of the *United States*, in *Lockport, Niagara* county, *New York*, in *September*, 1864, and received, as a bounty from that county, two hundred dollars in cash and the bonds described in the complaint, which bonds were immediately sent by express to the plaintiff's wife, *Hannah Stack*, at *Chicago, Illinois*. In *July*, 1865, the plaintiff was mustered out of the service, near *Albany, New York*, and arrived home in *Chicago* on the 16th of that month. A few days before the plaintiff got home, his wife appeared at the provost marshal's office in *Chicago*, and after a conference with Captain *James*, the provost marshal, she was referred by him to the witness *Eveleth*, then a clerk in the office, with a request that he attend to her business. She then exhibited to *Eveleth* a paper purporting to be a telegram from her husband, *James Stack*, from number 64, *Montgomery* street, *Albany, New York*, directing her to send those bonds to *Albany, New York*, 64 *Montgomery* street. She handed *Eveleth* two bonds, answering the description of those in the complaint referred to, who, thereupon, inclosed them properly and directed the package "To *James Stack*, 64 *Montgomery* street, *Albany, New York*." He also indorsed on the back of the package

the amount inclosed, and the words "From Mrs. *Hannah Stack, Chicago, Illinois.*" He, at the same time, wrote a letter, in the name of *Hannah Stack*, to be sent by mail, informing *James Stack* of the transmission of the bonds by express, and addressed the letter to "*James Stack*, 64 *Montgomery* street, *Albany, New York.*" On the 11th of *July*, *John Staving*, then receiving clerk of the *United States Express Company* at *Chicago*, received the package and gave a receipt therefor, in which that company undertook to forward the package to the nearest point reached by it, and that the company should only be liable as forwarders. The *United States Express Company* carried the package to *Buffalo, New York*, (the end of the line,) and there delivered it to the appellant. The package reached *Albany, New York*, on the 14th of *July*, 1865, and was there delivered, by the duly authorized agent of the defendant, on the 15th, (the next day,) to a man representing himself to be *James Stack*, under these circumstances: On the day of its arrival, the delivery agent of the company called with it at 64 *Montgomery* street, which was a hotel, or boarding house, kept by *Lillis*, and there found, on inquiry, that *Stack* was not then in, whereupon the package was returned to the defendant's office. On the morning of the 15th of *July*, a man called at the office, representing himself to be *James Stack*, and showed the agent a letter purporting to come from *Hannah Stack*, from *Chicago*, informing him (*Stack*) that the bonds had been sent by express. He was informed by the agent that he must get some one to identify him—that the letter was not enough. The man left the office, and shortly after returned with *Lillis*. The agent was unacquainted with the latter, and required some one known to him (the agent) to be brought to vouch for *Lillis*. *Slevin* was then brought in, who was known to the agent to be a reliable man. *Slevin* did not know *Stack*, and so informed the agent, but did know *Lillis*, and represented him to the agent as all right and reliable. The agent then asked *Lillis* whether the man with him was *James Stack*, and *Lillis* replied that

he was, and was staying at his (*Lillis'*) house. *Lillis* was asked no other question and gave no other information. The man calling himself *Stack* was asked by the agent, in the presence of *Lillis*, what the package contained, and the man replied that it contained a bond for $500, and one for $300, *Niagara* county war bonds, and was from his wife, *Hannah Stack*, from *Chicago*. The agent thereupon delivered the package to the supposed *Stack*. The person to whom the package was delivered was not the real *James Stack*, but a swindling pretender, who had doubtless sent the false dispatch to *Stack's* wife. The appellee did not send the dispatch which his wife got, nor had he any knowledge of its being sent. *Lillis* had no other knowledge or information about the pretender than this: About a week or ten days before the package was delivered, a man came to his house and said his name was *James Stack*, and that he was a soldier, stopping at the barracks, then located between *Troy* and *Albany*, and asked permission of *Lillis* for a room to write a letter to his wife, which was given. After the letter was written, he asked *Lillis* for his address, which was given thus: "*James Lillis*, 64 *Montgomery* street, *Albany*, *New York*." *Stack* said he would have a letter addressed to him at *Lillis'* house, and requested that if it came it should be kept. After that he called occasionally at *Lillis'* house and took meals, up to the time the package came; and, in the meantime, a letter came to *Lillis'* house for him, and he stated to *Lillis* that the letter came from his wife, and informed him of the sending of a package by express. The agent of the express company, at the time he delivered the package, was not aware of the nature or extent of *Lillis'* knowledge and acquaintance with the pretender, nor did he ask any question or make any effort to acquire such information.

It is claimed, that admitting the liability assumed by the appellant to be that of a common carrier, yet that such liability terminated when the package was taken to 64 *Montgomery* street, and thereafter the appellant was only bound

to ordinary diligence in keeping the package for the owner. It is also urged that the contract entered into between the plaintiff and the *United States Express Company* is to govern in fixing the liability of the appellant.

It is not necessary, for the determination of this case, that we should pass upon either of these propositions. For in any event the liability of the company could not be less than that of a warehouseman.

In *Devereux et al.* v. *Barclay et al.*, 2 Bar. & Ald. 702, it was held that trover will lie for the mis-delivery of goods by a warehouseman, although such mis-delivery has occurred by mistake only. Nor will a delivery on a forged order protect the warehouseman. *Lubbock* v. *Inglis*, 1 Starkie 104, (2 En. Com. L. 215.)

The court below found, under the facts, that there was a want of ordinary diligence on the part of the company in the delivery of the package. We think the evidence justifies this conclusion. But we are not inclined to apply this rule to the delivery of goods entrusted to warehousemen and others in like condition. There must be a delivery to the right person. It is always in the power of the person having the goods in charge to identify the owner. If he suffer himself to be imposed on, it is his own fault.

The judgment is affirmed, with costs, and three per cent. damages.

*J. M. La Rue,* for appellant.

*J. A. Stein,* for appellee.