ISIDOR BUSH *et al.*, Respondents, *v.* ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY, Appellant.

November 14, 1876.

1. I. B. received an order for goods from H. H., whom he did not know, dated at St. C., a town of 8,000 inhabitants. Upon consulting a mercantile directory, I. B. ascertained that a saloon-keeper of good mercantile repute, named H. H., resided there, whereupon he sent the goods, by the defendant, a common carrier, to "H. H., St. C., Mo.;" also a bill of lading and a bill for the goods, by mail, to same address. By the bill of lading, if the goods were not removed within twenty-four hours after arrival at St. C., defendant was liable only as a warehouseman. At the date of these transactions there were two men in St. C. calling themselves H. H. — the saloon-keeper, and a stranger who had been there but a short time. On the arrival of the goods the defendant notified the saloon-keeper H. H. of their arrival, who said he had not ordered them, and would not receive them. The goods were removed to the warehouse of defendant. Four days afterward the stranger H. H. claimed the goods. Defendant's agents refused to deliver them, although they had heard of him as about opening a store there. He produced the bill of lading for them and delivered it to defendant's agents, who took his receipt for the goods and delivered them to him. He appeared in St. C. about a week or ten days before this, registered his name as H. H., at a hotel, rented a store by that name, and employed carpenters to fit it up, who went to work there. He sold part of the goods, shipped the remainder to himself at another point, and left St. C. The goods were not paid for. I. B. sued the defendant for the value of the goods, alleging a misdelivery. *Held*, that there was no misdelivery, and that I. B. could not recover; that the liability of defendant was that

of a warehouseman; that there was an exercise of due diligence; and that the plaintiffs were guilty of negligence in not more particularly describing the business or address of the person to whom they intended to sell.

2. A warehouseman who uses due diligence is not liable to the consignor as for a conversion, in case of misdelivery, where the misdelivery is superinduced by the laches of the consignor, and the question of diligence is one for the jury.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*John M. Woodson*, for appellant, cited: Benj. on Sales, 1st Am. ed., sec. 362; Dutton *v.* Solomonson, 3 Bos. & Pul. 584; Kerulder *v.* Ellison, 47 N. Y. 36; Arnold *v.* Prout, 51 N. H. 587; Garland *v.* Leane, 46 N. H. 245; Woolsey *v.* Bailey, 27 N. H. 217; Smith *v.* Smith, 27 N. H. 244; Putnam *v.* Tollston, 13 Metc. 517; Stanton *v.* Eager, 16 Pick. 469; Johnson *v.* Stoddard, 100 Mass. 306; Torrey *v.* Corliss, 33 Me. 336; Barry *v.* Palmer, 19 Me. 303; Wing *v.* Clark, 24 Me. 366; Odell *v.* Boston & Maine Ry., 109 Mass. 50; Rodgers *v.* Phillips, 40 N. Y. 529; Wag. Stat., secs. 4, 6–9, ch. 19; Odell *v.* Gray, 15 Mo. 342; Vallé *v.* Cerre, 36 Mo. 587; Davenport National Bank *v.* Homeyer *et al.*, 45 Mo. 149; Burnell *v.* New York Central R. R. Co., 45 N. Y. 90; Add. on Torts, 3d ed., 329.

*George W. Taussig*, for respondents, cited: 2 Redf. on Rys., 3d ed., 25, 170; Story on Bail., secs. 543, 545, 546; 2 Hill. on Torts, 565, 598; Ang. & Ames on Corp., secs. 270, 274; Duff *v.* Budd, 3 Brod. & B. 177; Saguer *v.* London Ry. Co., 32 Eng. Law & Eq. 338; Claflin *v.* Boston R. R. Co., 7 Allen, 341; Hall *v.* Boston R. R. Co., 14 Allen, 443; Lichtenhein *v.* Boston R. R. Co., 11 Cush. 73; American Express Co. *v.* Stack, 29 Ind. 27; Winslow *v.* Vermont R. R. Co., 42 Vt. 700; Price *v.* Oswego R. R. Co., 50 N. Y. 213; American Express Co. *v.* Fletcher, 25 Ind. 72; Stephenson *v.* Hart, 4 Bing. 476; Devereux *v.* Barclay, 2 Barn. & Ald. 702; Michigan R. R. Co. *v* Heaton, 37 Ind. 452; Smithers *v.* Steamboat, etc.,

27 Mo. 315 ; Cauntling *v.* Hannibal & St. Joseph R. R. Co., 54 Mo. 389 ; Chitty's Pl. 155.

BAKEWELL, J., delivered the opinion of the court.

This is a suit for the value of certain packages of wine and whisky, which, it is alleged, the defendant, as a common carrier, received from the plaintiffs, the owners thereof, on February 6, 1873, to deliver to one Henry Hund, at St. Charles, Missouri, and which, it is claimed, they did not deliver according to contract, but converted to their own use, so that the value thereof was totally lost to plaintiffs.

It appears from the evidence that the plaintiffs, on February 6, 1873, were merchants and copartners at St. Louis, and at that date received a letter from St. Charles, signed " Henry Hund," ordering the goods mentioned in plaintiffs' petition — one barrel containing forty-nine gallons of wine, and one keg containing ten gallons of whisky. They did not know any Henry Hund at St. Charles, but, on consulting Bradstreet's reports, found that there was at St. Charles a man named Henry Hund, a saloon-keeper, of good mercantile repute. They thereupon at once shipped the goods over defendant's road, addressed to " Henry Hund, St. Charles, Missouri," and at the same time sent by mail, to the same address, a duplicate copy of the bill of lading issued by defendant to them, and also a bill for the goods sold. The bill of lading contained a condition that the goods should be removed from defendant's station within twenty-four hours after arriving at their destination, and that, if not so removed, the liability of defendant as a common carrier of said goods should then cease, and it would hold them as a warehouseman, at the risk of the consignee. That on February 6, 1873, there were in St. Charles two men calling themselves Henry Hund — one a saloon-keeper, of good character and standing, and an old resident, and the other a stranger, who had come to St. Charles a week or ten days before that date. For distinction's sake we will call the old resident Henry Hund No. 1, and

the new-comer Henry Hund No. 2.   On February 7, 1873,
as well the liquors sued for, as some packages of groceries
in another way-bill, arrived from St. Louis at the depot of
defendant at St. Charles, all marked " Henry Hund, St.
Charles, Mo." The agent of defendant at once notified
Henry Hund No. 1 of their arrival, and he said he had
not ordered them, and knew nothing about them, and would
not receive them.   After remaining at the depot twenty-
four hours the goods were sent, according to the custom of
defendant, to the warehouse of defendant, to await the ap-
pearance of the consignee.   About four days afterwards,
Henry Hund No. 2 came forward and claimed the goods.
The agents of defendant at first refused to deliver them,
saying that they did not know the applicant, although both
the station-agent and the warehouseman of the defendant
had previously heard of this Henry Hund, as having re-
cently come to St. Charles, and about opening a store
there.   He then said the goods were his, and he had the
bill of lading for them, which he produced and delivered to
defendant's agents, who thereupon took his receipt for the
goods and delivered them to him.   Henry Hund No. 2 ap-
peared in St. Charles about a week or ten days before these
events.   He went to a hotel and registered his name as
Henry Hund ; he rented a store by that name, and made
some attempt at fitting it up, employing carpenters for that
purpose, who went to work there.   He stored his whisky
and wine, when they arrived, in a cellar in the occupation
of the hotel-keeper, and sold him twenty-five gallons of
whisky, for which he was paid.   After spending about two
weeks in St. Charles, he paid his hotel-bill and left, having
previously reshipped what remained of the whisky and
wine to his own address at St. Louis, where he received it
in a day or two, and was heard of no more.   St. Charles is
a town of some 8,000 inhabitants ; and no other Henry
Hund seems to be known to any of the witnesses questioned
on the subject, as residing in St. Charles at the date of

these transactions, except the saloon-keeper and this transient boarder.

The cause was tried by the court sitting as a jury.

The court, at the instance of plaintiffs, declared the law to be,

1. That, on the evidence, plaintiffs are entitled to recover the value of the goods and interest.

2. That if plaintiffs were the owners of the goods described, and delivered them to defendant, and defendant agreed to carry them and deliver them to Henry Hund at St. Charles, for a reward to be paid by Henry Hund; that defendant carried said goods and did not deliver them to Henry Hund, but that defendant delivered them to a pretended Henry Hund, who presented to them the bill of lading; and if such person having said bill of lading was the person who ordered the goods of plaintiff, but was not Henry Hund, then the jury will find for plaintiffs, and assess, etc.

The defendant asked an instruction that, on the evidence, plaintiffs are not entitled to recover; and also asked several instructions, based upon its view of the law and facts of the case, as to the presumption of ownership arising from possession of the bill of lading, as to the degree of defendant's liability, and the degree of diligence to which it was bound; and an instruction based upon the theory that Hund No. 2 was an imposter, but the person to whom the goods were really sold, and who had the bill of lading. All these instructions were refused; and for the purposes of this case it is not necessary to set them out fully, nor to examine them.

The court gave a verdict for plaintiffs. A motion for a new trial having been filed and overruled, and all exceptions being saved, and the judgment of the Circuit Court at special term having been affirmed in general term, *pro forma*, the cause is brought here by appeal.

We are of opinion that, on this state of facts, plaintiffs are

not entitled to recover; and the instruction to that effect should have been given.

There is not a scintilla of evidence that the man who received the goods was not Henry Hund. He called himself so, and was so called by every one who knew him during his two weeks' stay at St. Charles. He ordered these goods as Henry Hund; he got the letter containing the bill of lading from the post-office as Henry Hund; he was the Henry Hund who ordered the goods, in consequence of whose letter they were sent, and who received them. Had they been delivered to Henry Hund the saloonkeeper, they would have been manifestly delivered to the wrong man. Had Hund No. 2 paid for them, plaintiffs would clearly have agreed with defendant that he was the right man. Had defendant refused to deliver them on presentation of the bill of lading, and written to St. Louis for instructions from the consignors, it would have been clearly liable to the consignors for any loss or damage to the goods whilst in its possession awaiting an answer to its letter. It is difficult to see what other course the carrier could pursue than that of delivering the goods to the Henry Hund who had the bill of lading. If there were any laches here, they were the laches of the consignors, who neglected more particularly to designate Henry Hund. If they meant to sell to the saloon-keeper only, his place of business in St. Charles, or the character of his business, should have been marked upon the package, as a direction to the carrier.

It is urged by counsel for respondent that, where there has been a misdelivery by a common carrier, the carrier is liable in trover, without regard to the question of his care or degree of negligence; and, also, that though the vendor may intend to pass the property in goods to the vendee, yet, if that intention was induced by the fraudulent device of the vendee, the property does not pass. If both of these principles were sustained by authority, this case would

not be free from difficulty ; but an examination of the cases cited serves to show that these propositions cannot be asserted as settled law at the present day.

The case of *Duff* v. *Budd*, 3 Brod. & B. 184, was decided in 1822. The facts were as follows : A person called on plaintiffs and ordered goods for a respectable tradesman, Mr. Parker, of the High Street, Oxford. Plaintiffs, having no previous dealings with this tradesman, or with the party ordering the goods, pause ; but having found, on inquiry, that, among the various persons bearing the name of Parker, at Oxford, Mr. Parker of the High Street was 'well known for his respectability, they direct the parcel to him ; and the very use of the address added to the name was to insure a requisite degree of caution, for the parcel was not directed to " J. Parker, Oxford," but to " Mr. James Parker, High Street, Oxford." On the arrival of the parcel at Oxford, the carrier's porter, who knew Mr. Parker of the High Street (and who was accustomed to deliver parcels at the houses of the consignees), told him of the arrival of the parcel, no other Parker residing in that street. Mr. Parker said he expected no parcel, and knew nothing about it. A person to whom the porter had before delivered goods under the name of Parker called at defendant's office shortly afterwards, and, saying the parcel was his, was allowed to take it on paying the carriage, there being persons of that name in Oxford. There was a verdict for plaintiffs, and the court refused to set it aside. But Dallas, C. J., before whom the case was tried, says : " I stated to the jury that the duty of the carrier might be different under different circumstances. A parcel might be directed to be left till called for ; it might be directed to a consignee in a larger town, without the name of any street, as was the case in *Birkett* v. *Willan*, 2 Barn. & Ald. 356, where the carrier, having delivered it, on payment of the carriage, to one who told him he had been sent for it by a person

whom he did not know, but who was in the street, was holden to be chargeable with the consequence of gross negligence.''

In this case there was a manifest misdelivery, as, whoever the person was who got the goods, he was not a Parker of High Street. It is not, therefore, parallel with the case at bar. But the question of diligence seems to have been left to the jury.

*Stephenson* v. *Hart*, 4 Bing. 476, was decided in 1828. In that case, plaintiff, having been imposed upon by a swindler, consigned a box at Birmingham, by the defendants as common carriers, to '' J. West, 27 Great Winchester Street, London.'' The defendants found that no such person resided there ; but, upon receiving a letter signed '' J. West,'' requesting that the box be forwarded to a public house at St. Albans, they delivered it to a person calling himself West, who showed that he had a knowledge of the contents of the box, that box having been originally obtained of the plaintiff by fraud. It was held that defendants were liable to him for an action of trover.

But Gaselee, J., dissented, and says : '' It is clear that, where goods are dispatched by a carrier, the contract for the payment of the carriage is between him and the consignee, even though the goods should have been booked by the consignor, and though the property in those goods turned out afterwards to have been in the consignor, yet that did not appear at the time of the contract. Then, can the action be maintained in trover? There can be no doubt that this was a swindling transaction, and I incline to think that the question of fraud was sufficiently left to the jury by what fell from the learned chief justice in the course of the trial. But, taking that to be so, my doubt is whether — the goods having been delivered to the person who, up to the time the bill drawn by LeCompte became payable, was the person apparently entitled to them — the defendants are liable in trover for such delivery,

as having been guilty of a wrongful conversion of the goods. In delivering to a wrong person, a carrier is no doubt responsible in trover; but, from all that appears in this case, it may be collected that the person who received the box in St. Albans was the person calling himself West, *and the person to whom it was intended the box should be delivered.*"

But in 1870 two cases were decided in the Court of Exchequer, which have rendered these two last-cited cases of doubtful authority.

The first of these cases is *McKean* v. *McIvor* et al., Law Rep. 6 Ex. 36. There the plaintiffs, being imposed on by a fictitious order sent by H., a person employed by them to obtain orders, forwarded goods by defendant's carrier between Liverpool and Glasgow, addressed to C. Tait & Co., 71 George Street, Glasgow. But H. had made arrangements at 71 George Street for receiving letters, etc., addressed there under that name. On arrival of the goods at Glasgow, the defendants, following the course of business usual with carriers between Liverpool and Glasgow, sent a notice to the address appearing on the goods, requesting their removal, and stating that the notice must be produced, indorsed, as a delivery order. This notice was received by H., who indorsed it " C. Tait & Co.," and, upon presenting it so indorsed, obtained delivery of the goods. The action was for misdelivery. It was held that defendants, having followed the usual course of business, which must be made a part of plaintiffs' directions, had obeyed plaintiff's directions, and were not liable.

Bramwell, B., says: " I can see no want of reasonable care. Did not the persons designated as C. Tait & Co. in fact get the goods? If so, defendants are clearly in the right. In *Stephenson* v. *Hart* there were circumstances to excite suspicion. But I think the reasoning of Gaselee, J., who dissented, is right."

*Heugh* v. *London & Northwestern Railway Company*, Law Rep. 5 Ex. 51, was also decided in 1870. It was there

decided that carriers, after the refusal of the goods at the consignee's address, are involuntary bailees, and are only bound to act with reasonable care and caution with respect to the goods.

The facts in that case are that plaintiff, acting upon a supposed order, forwarded goods by defendants' line to the address of a company from which the order purported to come, but which had ceased to exist. Defendants tendered the goods at plaintiff's late place of business, and the goods were refused. Defendants then took back the goods to the station, and mailed an advice note to the company, requesting instructions for their delivery. A few days after, Nurse, who had written and sent said order in the company's name, brought to the station the advice note, and a delivery order purporting to be signed by himself for the company, and obtained delivery of the goods. Afterwards, another sale of goods, similarly consigned by the plaintiff in pursuance of the same order, was obtained by Nurse from the company, under similar circumstances, except that no advice note was given. It was held that the question of reasonable care was rightly left with the jury, and that, the jury having found for the defendants, the verdict would not be disturbed.

Channell, B., says: "It is admitted the defendants in this case are not carriers. Are they warehousemen? Did they not occupy an intermediate position as unwilling bailees? In neither the case of *Stephenson* v. *Hart* nor in *Duff* v. *Budd* was it held or contended that misdelivery was a conversion; but it was a question, to the jury, of reasonable care, and it was left to them." And Kelly, C. B., says: "From the plaintiff's act in giving credit to Nurse the whole difficulty arose, and the jury had a right to consider this." And Channell, B., says: "Some American cases are cited in support of the proposition that the delivery to Nurse amounted to a conversion; but they fail to satisfy me that any such duty was cast on defendants as to

produce this legal result, or that any duty was imposed on them to do more than they have done."

That trover will lie for misdelivery of goods by a warehouseman, though such misdelivery has occurred by mistake only, was held in *Devereux* v. *Barclay*, 2 Barn. & Ald. 702. And it has been repeatedly held in America that, where there is a misdelivery by a carrier, the question of care or negligence cannot arise ; that he is absolutely liable. But every case on the subject that we have seen is plainly distinguishable from the one at bar ; and holding, as we do, that, by the sale in the case before us, the property in the goods passed to Henry Hund No. 2, who ordered them, we think that there was no misdelivery whatever in this case.

In *Claflin* v. *Boston & Lowell Railroad Company*, 7 Allen, 341, it is said that misdelivery by a carrier of an article intrusted to him to be carried is a conversion ; but it is held in that case that if, in pursuance of an executory contract of sale, the owner of merchandise send a quantity of it to the place named for the delivery, and notify the purchaser thereof, and furnish him with an order entitling him to obtain it of the carrier, and receive pay therefor, this is sufficient to vest title in the purchaser.

In *Hall* et al. v. *Boston & Worcester Railroad Company*, 14 Allen, 443, it is held that a misdelivery of property by any bailee, to a person unauthorized to receive, is a conversion rendering the bailee liable in trover, without regard to the question of care or negligence, inasmuch as trover is only maintained by proof of misfeasance amounting to a conversion. In such cases the common carrier, who is an insurer, the warehouseman, bound to exercise ordinary care, and the gratuitous bailee, liable only for gross negligence, are all said to stand on common ground. In case of a misdelivery, any bailee, however innocent, is liable, according to the doctrine of this case.

In *Lichtenhein* v. *Boston & Providence Railroad Com-*

*pany*, 11 Cush. 73 (1853), it is decided that, in case of delivery to the wrong person by mistake, a warehouseman will not be allowed to show that he used ordinary care and prudence. It is manifest that these cases cannot be reconciled with the English rule as laid down in the later cases cited above.

*Price* v. *Oswego & Syracuse Railroad Company*, 50 N. Y. 213, is a case decided in 1872. The facts were as follows : Price, of Syracuse, received an order purporting to come from S. H. Wilson & Co., of Oswego, for bags. In pursuance of this order, three bales were delivered to the defendant as carrier, addressed, " S. H. Wilson & Co., Oswego." Defendant undertook to carry them, and mailed bill of the bags to S. H. Wilson & Co. A man called for the bags at Oswego, paid the freight, and took them away, signing the receipt, " S. H. Wilson & Co." There was no such firm in Oswego. The defendant made no inquiry as to this, and required no evidence of the indentity of the person who received the goods, or of his connection with the firm. It was held by the court, in this case, that the person who wrote the order acquired no right to delivery of the goods ; and it is said in the opinion that it was the duty of defendant to warehouse the goods and keep them for the owner. Church, C. J., dissents from the opinion of the court, and Allen, J., did not vote. The facts in this case are very much as in *McKean* v. *McIvor*, but the decisions are contradictory.

In *Winslow* et al. v. *Vermont & Massachusetts Railroad Company*, 42 Vt. 700, one Collins, in the employ of defendant at Brattleboro, Vermont, suggested to plaintiffs that he knew a man named Roberts, at Roxbury, Massachusetts, likely to purchase rags, and advised them to write to him. They did so ; and, in return, received a letter from Collins, in a disguised hand, ordering a certain quantity of rags, which were duly shipped to J. F. Roberts, and received at their

destination by Collins. There was no such man as J. F. Roberts. Collins employed one Chough, a truckman of defendant, to get the goods from the company for him, saying he was to deliver them to Roberts. In this case it was held that there was a misdelivery, and that the carrier was liable.

The case of *The American Express Company* v. *Fletcher* et al., 25 Ind. 493, was decided in 1865. The facts were these : Fletcher & Co., bankers at Indianapolis, sue for the loss of a package which the appellant, the express company, undertook to carry from Indianapolis to Arcola, Illinois, and deliver to one J. O'Riley *in person;* for so the contract reads. The agent of the express company at Arcola was also the telegraph operator there. A person who was not J. O'Riley, but who pretended to be so, sent a telegram from Arcola, requesting that a certain sum of money be at once forwarded to him by express. In consequence of the telegram, Fletcher & Co. sent on to Arcola a money package addressed to J. O'Riley at Arcola. The package was delivered to a man who identified himself as the man sending the telegram, but who did not identify himself as being J. O'Riley. This was held to be a failure to act with proper caution; and the court says that it was a want of ordinary diligence, even as forwarders.

*The American Express Company* v. *Stack*, 29 Ind. 27, is also an Indiana case, and was a suit for loss of a package by delivery to the wrong person. The court declined to examine the question as to whether the liability of the company, under the contract, was that of a common carrier or as a warehouseman, because in either case the company was bound to deliver to the right person. In this case the package was carefully addressed to "James Stack, 64 Montgomery Street, Albany, N. Y.," with an indorsement that it was from Mrs. Hannah Stack, Chicago, Illinois. A letter was at the same time written to the consignee, to the same ad-

dress, informing him of the contents of the package, which were two county bonds. About two weeks before this package was sent, a man came to 64 Montgomery Street, which was a tavern, and asked for a room in which to write to his wife at Chicago, saying that he was a soldier staying at the barracks at Troy, and his name, James Stack. This man was an impostor. He came, from time to time, to 64 Montgomery Street, and took meals; and he asked Lillis, the proprietor, to receive and keep any letter or package which might come for him, saying that he had telegraphed to his wife to send him some bonds. When the package arrived at Albany the express messenger, on taking it to 64 Montgomery Street, was informed by Lillis that Stack was not in, and he took the package back to the office. The next day the pretended Stack called for the package at the express office, and was identified by Lillis. He was told that they did not know Lillis; whereupon Lillis was identified by one Steins, and, upon the pretended Stack stating the contents of the package, it was delivered to him. The court found a want of ordinary diligence on the part of the company; and, on appeal, the Supreme Court says: " We think the evidence justifies this conclusion. But we are not inclined to apply this rule to the delivery of goods intrusted to warehousemen and others in like condition. There must be a delivery to the right person. It is always in the power of the person having goods in charge to identify the owner. If he suffers himself to be imposed upon, it is his own fault."

We do not think the cases can be reconciled. In the case at bar, the liability of defendant as a common carrier had ceased at the time of the delivery of the package. Its liability was that of a warehouseman, according to its contract. Following the later English cases, we think that the property in the goods was in Henry Hund No. 2 at the time of their delivery to him, even if he took advantage of

the good credit of his synonym, and calculated that Bush
& Co. would suppose that the goods were really ordered by
Hund No. 1. We, therefore, think that there was no mis-
delivery in the case, as, for all that appears, they went to
the real purchaser; but, as we further think that the de-
fendant exercised sufficient diligence, and that the plaintiffs
were guilty of negligence in not more particularly describing
the package, the business, or the address of the man to
whom they intended to sell the goods, that plaintiffs could
not recover, even should it appear that the man who got the
goods was an imposter and his name not Henry Hund. We
do not hold that a warehouseman who uses due diligence
is liable to the consignor as for a conversion of the goods
in case of a misdelivery, where the misdelivery is superin-
duced by the laches of the consignor. Following what we
regard as the later and better rule, we think that in such
cases the question of diligence is one for the jury.

The instructions given for plaintiffs were erroneous; there
was no evidence whatever to support them.

On the contrary, the evidence was indisputable that
defendant, at the time of delivery, was a warehouseman;
that the goods were not delivered without proper inquiry,
and such information as might well be satisfactory to a pru-
dent business man; and that the goods were delivered to
the man who, through the act of respondents, had posses-
sion of the bill of lading, and who seems to have been the
very man to whom both goods and bill of lading were
addressed.

The judgment of the Circuit Court is reversed, and the
cause remanded to be proceeded with in accordance with
this opinion. All the judges concur.