WINSLOW, WARD & Co. v. THE VERMONT & MASSACHUSETTS RAILROAD COMPANY.

*Common Carriers. Warehousemen. Liability for Delivery to the Wrong Person.*

Where a common carrier receives goods to transport and deliver at a certain point to a person named, and immediately upon their arrival delivers them to another person, and they are thereby lost, the carrier is liable as such, if liable at all, and not as a warehouseman.

All classes of common carriers are responsible, and equally responsible, for a loss of the goods by delivery of them to the wrong person; and it is no defense to their liability that they delivered them in the customary manner and in the usual course of business.

The goods in question were directed to J. F. Roberts, Roxbury, Massachusetts. There was no such person as J. F. Roberts, and no person who was known or passed by that name. Collins, whom the plaintiffs well knew as Collins, had represented that there was such a person as J. F. Roberts in Roxbury, and had induced the plaintiffs, at Brattleboro, to consign the goods to that address. Collins then went to Boston, and upon the arrival of the goods employed one Clough, a truckman, to get them at the depot and deliver them to a dealer in Boston, representing himself to Clough that he was J. F. Roberts, and that there were goods at the depot directed to him. The defendants' freight agent delivered the goods to Clough upon his representation that Roberts directed him to get them, and Clough paid the freight and receipted for them in his own name, the defendants having no knowledge of any fraud being perpetrated. Collins sold the goods, received the money for them and left the country, and the plaintiffs were never able to recover it of him. *Held,* that the defendants were liable as common carriers for the loss.

ASSUMPSIT against the defendants as common carriers, heard on the following agreed statement of facts :

" On the 23d day of February, 1867, the plaintiffs were engaged in the rag and paper stock business at Brattleboro, Vermont, and one John Collins then was, and for some time previous thereto, had been in their employment in that business. On that day the plaintiffs had on hand and for sale the twenty-one sacks of rags mentioned in their declaration, and of the value of $471.10. This fact was known to said Collins, who suggested to the plaintiffs that he was acquainted with a man in Roxbury, Massachusetts, by the name of J. F. Roberts, who was engaged in that business and would be likely to purchase said rags, and advised the plaintiffs to write him upon the subject. On the said 23d day of February the plaintiffs, acting on said Collins' suggestions, wrote a letter to said Roberts, offering said rags for sale and describing them, which letter they mailed on that day at the Brattleboro post-office, directed to J. F. Roberts, Roxbury, Massachusetts.

"On the same day or the day following, said Collins made an excuse to the plaintiffs for being absent from their employment and from town for a few days, and went away and never returned. On the 26th day of February, the plaintiffs received a letter through the Brattleboro post-office, purporting to have been written by J. F. Roberts, and which they in good faith supposed was an answer to their letter to him, but which was in fact written by said Collins in a disguised hand-writing. The following is a copy of said letter :

"'Roxbury, Mass., February 25, 1867.

"' *W. Ward & Co.:*

"' Gents :—Yours of the 23d is at hand, and would say, for blue stockings, 8 cents per lb., for Tr. clippings, 11 cents per lb.

"' Yours truly, J. F. Roberts.'

"Acting upon this letter, the plaintiffs, on the 28th day of said February, delivered said rags to the defendants, who were common carriers of goods and merchandise between Brattleboro and Boston, Massachusetts, at their depot in Brattleboro. The defendants received said goods and then and there undertook and promised the plaintiffs to transport the same to Boston, and there deliver them to said Roberts, the consignee. On the same day, the plaintiffs sent a letter to said Roberts, informing him that they had shipped the goods to him pursuant to his offer, but hearing nothing from their goods for some three or four weeks after their shipment, went to Boston to look them up, when they ascertained what is hereby conceded to be true, that said goods safely and in due time arrived at defendants' freight depot in Boston, that said Collins had been in Boston awaiting their arrival, that when they arrived there he applied to one William Clough, who was the employee of a truckman and accustomed to take freight from said depot, whom he informed that his name was J. F. Roberts, that he had a quantity of rags at said depot directed to him, and requested him to go there and get them and carry them to a firm in Boston ; that Clough went to said depot and applied to the defendants' freight agents for said goods, saying that Roberts had directed him to get them ; that said freight agents delivered the goods to Clough upon his representation that Roberts directed him to get them, and Clough receipted for them in his own name upon the books of the defendants, and took them away and delivered them where Collins had directed him to a firm in Boston, to whom Collins had sold them, representing himself to be J. F. Roberts, of Brattleboro, Vermont. It is further conceded that there was in fact no such person as J. F. Roberts, but that this name was assumed by Collins, for the purpose of defrauding the

plaintiffs of said goods; that after he sold them and collected the money for them, he left this section of the country, and the plaintiffs were unable to recover said money from him or even learn where he was; that after learning that it was Collins who had got their goods, they informed the defendants of it and demanded of them pay for the same, on the ground that they had wrongfully delivered them. Upon the defendants refusing to pay for them this suit was brought. Said Clough paid the freight on the goods when he took them from the depot, and the defendants had no knowledge that any fraud was being perpetrated. The value of the goods at the time of their shipment was $471.10. The defendants' railroad runs from Brattleboro to Fitchburg, Massachusetts, and the Fitchburg railroad runs from Fitchburg to Boston, which two roads it is hereby conceded, as to the plaintiffs, and in fact, constitute one line of road, but the delivery of said goods to Collins in the manner stated was by the agents and servants of the Fitchburg railroad company, and the above concessions and statement of facts are not to affect any legal claims or rights that may hereafter come in controversy between the two railroads in regard to the delivery of said goods."

The court at the September term, 1869, BARRETT, J., presiding, having rendered judgment *pro forma* for the plaintiffs upon the foregoing agreed statement of facts, the defendants excepted.

*Clarke & Haskins*, for the defendants.

The plaintiff's action is not well brought. They should have proceeded against the defendants as *warehousemen*, and not as *common carriers*. We understand that the principle is well settled that carriers by railway, in the absence of any *special contract*, are only bound to receive and deliver goods at their several railroad stations; and that they are under no obligation to deliver to the consignee personally, or even to give notice of the arrival of goods, only in certain exceptional cases. Redfield on Carriers, §§ 104, 105, 106; 1. Par. on Contracts, (2d Ed.,) 663; *Thomas* v. *Boston & Providence R. R. Co.*, 10 Met., 472; *Norway Plains Co.* v. *Boston & Maine R. R. Co.*, 1 Gray, 263; *Sawyer* v. *Joslin*, 20 Vt., 172; *Farmers & Mechanics Bank* v. *Champ. Trans. Co.*, 23 Vt., 186; same case, 18 Vt., 131; same case, 16 Vt., 52; *Blumenthals* v. *Brainard et al.*, 38 Vt., 402. We also understand that no principle of law is better settled than that

when goods, transported by railway, have arrived at their place of destination, and are deposited in the carriers' warehouse, to await the owner's convenience in sending for them, the duty and responsibility of the *carrier* is at an end, and the carrier's duty as a *warehouseman* commences. Story on Bailments, § 448; *In Re Webb et al.*, 8 Taunton, 443; *Denny* v. *N. Y. Cent. R. R. Co.*, 13 Gray, 481; see cases above cited.

But admitting that the plaintiff's action is well brought against the defendants as common carriers, then we insist we are not liable, for the reason, 1. The goods were delivered by the defendants at the freight depot in Boston, to the consignee, according to the well known and established custom or usage prevailing among all railroad companies; and the plaintiffs were bound to know and take notice of such custom or usage. *Farmers & Mechanics Bank* v. *Cham. Transp. Co.*, 16 Vt., 52; same case, 18 Vt., 131; *Van Santvoord* v. *St. John et al.*, 6 Hill, 157; Redfield on Carriers, §§ 220, 221. 2. The duty of carriers by railway, in respect to the delivery of goods, are very similar to the duties of carriers by water, wherein it has been repeatedly held that a delivery of goods to a wharfinger, such being the custom or usage, was a sufficient delivery to the consignee. *Chickering* v. *Fowler*, 4 Pick., 371; *Sawyer* v. *Joslin*, 20 Vt., 172; *Farmers & Mechanics Bank* v. *Cham. Transp. Co.*, 18 Vt., 131; same case, 23 Vt., 186. 3. Because *the person* to whom the goods were consigned by the plaintiffs actually received them, although under an assumed name.

It will not be pretended that *railway companies* are bound to exercise the same degree of care in the delivery of such goods as are ordinarily transported by them, as are *express carriers* in the delivery of parcels entrusted to them, more especially such parcels as bank bills, notes, drafts, and other negotiable and commercial paper. The law, as applied to these different kinds of carriers, has created a broad distinction. Redfield on Carriers, § 13.

John Collins, being the only J. F. Roberts known and in existence at the time, and he being the identical J. F. Roberts with whom the negotiations were had, and to whom the goods were bargained and sold, the J. F. Roberts to whom the plaintiffs' consigned the goods, and the J. F. Roberts to whom the goods were

subsequently delivered, was as to these defendants a good and sufficient J. F. Roberts to protect and justify them in the delivery which they made. The rule applies that where one of two innocent parties must suffer by the fraud of a third person, he who has placed confidence in, and has trusted such third person, and thus enabled him to deceive the other, is to abide the consequences of the fraud, however innocent he may be in other respects. Story on Agency, § 127; *Goodman* v. *Eastman et al.*, 4 N. H., 455; *Putnam et al.* v. *Sullivan et al.*, 4 Mass., 45; *Thurston* v. *McKown*, 6 Mass., 428; *Storer* v. *Logan et el.*, 9 Mass., 55; *Lickbarrow* v. *Mason*, 2 T. R., 70.

*Field & Tyler*, for the plaintiffs.

The duty of carriers of goods is well defined in 2 Hilliard on Torts, page 634. This loss does not come within either of the excepted cases. Story on Bail., § 492. The defendants undertook and promised to transport the goods to Boston, "*and there deliver them to said J. F. Roberts, the consignee.*" As there was no such person, it was their duty to store them safely for the plaintiffs. Nothing could justify them in delivering them to a third person. 38 Vt., 402. If the delivery be to a wrong person, although it be entirely by mistake, or by gross imposition, the carrier will be responsible for the value of the goods so lost. A wrongful delivery in respect to the person is, indeed, by the common law, treated as a conversion of the property. Story on Bail., § 543; 9 Barr., 148, cited in 9 U. S. D., 64; Ang. on Carr., § 324. A delivery of goods by a carrier to a wrong person upon a forged order will not excuse him. 2 Green. Ev., § § 212, 219; Redfield on Carr., § 318; 6 Hill, 486; 5 Strouh., 67, cited in 11 U. S. D., 60. It is no defense that the plaintiffs were first deceived by Collins, and induced by him to ship the goods. 4 Bing., 476, cited in 2 Hill. on Torts, 639; 1 Stark., 83; 3 Brod. and Bing., 177; Am. Law Reg., Nov., 1866, p. 21. The case does not show that the defendants' responsibility as common carriers had terminated, and that they had become mere warehousemen. Had this been the case, they did not exercise ordinary care and diligence, as such, to ascertain whether or not they were delivering the goods upon an

order of the consignee, and they would be liable. Story on Bail., § 450; 4 Barb., S. C. R., 361, cited in 10 U. S. D., 39; 15 Johns., 39.

The opinion of the court was delivered by

STEELE, J. I. The defendants claim that this action should have been brought against them as warehousemen, and not as carriers. This objection need not be considered unless from the facts it appears that the responsibility of the defendants as carriers had ceased and the new relation of warehousemen had been assumed before the time of the loss of the goods by the alleged mis-delivery. If the loss of the goods occurred while the defendants stood in respect to them under the responsibility of carriers, the action can clearly be sustained against them as carriers if it can be sustained at all. It is true the transit of the goods had ended before the alleged mis-delivery, but the defendants' relation as carriers did not end at the same time. The responsibility of the carrier, as such, continues after the goods have reached their destination until the party entitled to them has had a reasonable time to call for, examine, and take them. *Blumenthals* v. *Brainard*, 38 Vt., 402. It appears that the mis-delivery and loss here complained of occurred before the expiration of such reasonable time. Collins was in Boston awaiting the arrival of the goods, *and when they arrived* sent for and took them. If, therefore, the defendants are liable in any action by reason of the delivery of the goods to Collins, they are liable in this action, which proceeds against them as carriers.

II. It is urged that the defendants cannot even as carriers be held liable for delivering the goods to the wrong party, if they delivered them in the customary manner and in the usual course of business. We think no such exception to the common law rule can be made. The carrier is under the same contract, obligation or duty, to deliver the goods safely that he is to carry them safely. The law fixes these duties upon the carrier and he cannot relieve himself from them by proving his usage. It is true, as urged, that it is not as customary for other carriers as it is for express carriers to obligate themselves to look up the owner and consign and deliver the goods to him at his residence or place of

84

business. But all classes of common carriers are responsible, and equally responsible, for a loss of the goods by a delivery of them to the wrong person. *Stephenson* v. *Hart et al.*, 4 Bing., 476 ; (13 E. C. L., 596 ;) *Duff* v. *Budd*, 3 Brod. & Bing., 177 ; (7 E. C. L., 671 ;) *Fletcher* v. *Am. Ex. Co.*, Am. Law Reg., November, 1866.

III. In this case there was an error on the part of the plaintiffs in the direction of the goods. They were directed to J. F. Roberts, Roxbury, Mass. There was no such person as J. F. Roberts, and no person who was known or passed by that name. Collins, whom the plaintiffs well knew as Collins, had represented that there was such a person as J. F. Roberts in Roxbury, and had induced the plaintiffs to consign the goods to that address. Collins then went to Boston, and awaited the arrival of the goods, and claimed them under the name of J. F. Roberts, which name he assumed for the purpose of getting the goods. The swindle was successful. What should be the effect, upon the measure of the defendants' responsibility, of the plaintiffs' error in directing the goods to a fictitious address ? This might be an important question if the error had misled the defendants and occasioned them to deliver the goods to the wrong party after they had used that care and precaution which would be reasonable in such matters. But this error in the direction could not excuse the defendants from the duty of exercising at least ordinary care in the delivery of the property. They did exercise no such care. They were guilty of actual negligence. They delivered the goods to an employee of a truckman upon his mere statement that Roberts sent for them. Any other man in Boston could have obtained them just as easily. The swindler Collins was not known as Roberts, and if he had been required to identify himself as Roberts, might never have attempted it, and if he had, it would have been likely to lead to the detection of the fraud. If, therefore, the delivery of the goods to Collins through his agent was a mis-delivery, it was done under such circumstances of negligence as to make the defendants responsible under the most favorable rule as to care which they could ask.

IV. But it is claimed that there was no mis-delivery; that the

goods were delivered to the very party to whom they were sent, the only J. F. Roberts there was, and that the defendants have therefore fulfilled their contract. To say that Collins was the only J. F. Roberts, is to assume that he was J. F. Roberts, when in fact there was no such man, and Collins was not known by that name. It is not true that the goods were consigned to Collins. They were not so marked. They were not so intended. They were for J. F. Roberts. It does not follow, because there was no such man as Roberts, that they were for Collins. If there was no such man, then the goods were for the consignors. It is true the swindler misled the plaintiffs into consigning the goods as they did, but the swindle did not convert Collins into Roberts, and the plaintiffs did not consign the goods to the swindler at all.

In the case of *Stephenson* v. *Hart*, cited above, the plaintiff having been imposed upon by a swindler, consigned a box to J. West, 27 Great Winchester street, London. No such person resided there. The defendants, on learning that fact, held the box until they received a letter from the swindler or his confederate, signed " J. West," asking that the box should be sent to him at the " Pea Hen," a public house at St. Albans. The carriers sent the box as requested, and were held liable to the plaintiff for its value. In *Duff* v. *Budd*, *ubi supra*, the plaintiff, on an order from a stranger, consigned goods to " James Parker, High Street, Oxford." There was no such man. But there was a W. Parker of High street. The defendants, who were common carriers, offered the goods to W. Parker. W. Parker said he expected no parcel. A person to whom the defendants had before delivered goods under the name of Parker called and claimed the parcel. It was delivered to him, and thus lost to the plaintiff. The value of the parcel was £89, and the defendants had given notice that they would be responsible for no more than £5 value, unless the value was marked on the package, which was not done in this case. The jury having given the plaintiffs a verdict against the carriers for the full value, it was held there was no error, BUR-ROUGHS, J., remarking: "Carriers are constantly endeavoring to narrow their responsibility and creep out of their duties, and I am not singular in thinking that their endeavors ought not to be fa-

vored.   The question here is whether there was gross negligence.
I think there was, and I am of opinion that the case was properly
left to the jury and that they have given a proper verdict."

The judgment of the county court is affirmed.