NATHAN SAMUEL *vs.* BENJAMIN P. CHENEY.

Suffolk.   March 22. — July 3, 1883.   DEVENS & W. ALLEN, JJ., absent.

A. hired a shop and also a post-office box in a certain town, assuming the same name as that of a reputable merchant in that town.   After writing to the plaintiff, upon paper upon which were printed his assumed name and the number of his post-office box, and asking the price of certain goods, and receiving a reply, he ordered a quantity of the goods.   The plaintiff, relying upon the financial standing of the person whose name was assumed, and supposing the letters were written by him, forwarded the goods, addressed to A. with the name of the town, by a common carrier, and sent a letter, which was received by A., notifying him of the shipment.   The carrier took the goods to the shop hired by A. and delivered them to the occupant, who signed receipts for them in his assumed name; and he soon afterwards disappeared.   *Held,* that, in the absence of negligence on the part of the carrier, the plaintiff could not maintain an action against him for conversion of the goods.

TORT, against a common carrier, for the conversion of a quantity of cigars.   At the trial in the Superior Court, before *Colburn,* J., the jury returned a verdict for the defendant; and the plaintiff alleged exceptions.   The facts appear in the opinion.

*S. D. Warren, Jr.,* (*L. D. Brandeis* with him,) for the plaintiff.

*A. Russ,* for the defendant.

MORTON, C. J.   The principal facts in this case, regarded in the light most favorable to the plaintiff, are as follows:

In June, 1881, a swindler, assuming the name of A. Swannick, sent a letter to the plaintiff asking for a price list of cigars, and giving his address as "A. Swannick, P. O. box 1595, Saratoga Springs, N. Y."   The plaintiff replied, addressing his letter according to this direction.   The swindler then sent another letter ordering a quantity of cigars.   The plaintiff forwarded the cigars by the defendant, who is a common carrier, and at the same time sent a letter to the swindler addressed "A. Swannick,

Esq., P. O. box 1595, Saratoga Springs, N. Y.," notifying him that he had so forwarded the goods.

There was at the time in Saratoga Springs a reputable dealer in groceries, liquors and cigars named Arthur Swannick, who had his shop at the corner of Ash Street and Franklin Street, and who issued his cards and held out his name on his signs and otherwise as " A. Swannick." He was in good credit, and was so reported in the books of E. Russell and Company, a well-known mercantile agency, of whom the plaintiff made inquiries before sending the goods. No other A. Swannick appeared in the Saratoga Directory for 1881, or was known to said mercantile agency. But in June, 1881, a man hired a shop at No. 16 Congress Street, Saratoga Springs, under the name of A. Swannick, and also hired a box, numbered 1595, in the post-office, and used printed letter-heads with his name printed as " A. Swannick, P. O. box 1595." This man wrote the letters to the plaintiff above spoken of, and received the answers sent by the plaintiff. He soon after disappeared.

The plaintiff supposed that the letters were written by, and that he was dealing with, Arthur Swannick. He sent the goods by the defendant, the packages being directed " A. Swannick, Saratoga Springs, N. Y."

The defendant carried the packages safely to Saratoga Springs. On July 1, the defendant, by his agent, carried a package of cigars directed to A. Swannick to the said Arthur Swannick, who refused to receive it on the ground that he had ordered no cigars. Afterwards, on the arrival of the packages, the value of which is sought to be recovered in this suit, the defendant carried the same to the shop No. 16 Congress Street, and delivered them to the person appearing to be the occupant of the shop, and took receipts signed by him as " A. Swannick."

We assume that his real name was not A. Swannick, but that he fraudulently assumed this name in Saratoga Springs and in his dealings with the plaintiff.

The question whether, under these circumstances, the property in the goods passed to the swindler, so that a *bona fide* purchaser could hold them against the plaintiff, is one not free from difficulty, and upon which there are conflicting decisions. The recent case of *Cundy* v. *Lindsay*, 3 App. Cas. 459, is similar to

the case at bar in many of its features; and it was there held that there was no sale, that the property did not pass to the swindler, and therefore that the plaintiffs could recover its value of an innocent purchaser. That this case is very near the line is shown by the fact that such eminent judges as Blackburn and Mellor differed from the final decision of the House of Lords. *Lindsay* v. *Cundy*, 1 Q. B. D. 348.

But it is not necessary to decide this question, because the liability of the defendant as a common carrier does not necessarily turn upon it. The contract of the carrier is not that he will ascertain who is the owner of the goods and deliver them to him, but that he will deliver the goods according to the directions. If a man sells goods to A., and by mistake directs them to B., the carrier's duty is performed if he delivers them to B., although the unexpressed intention of the forwarder was that they should be delivered to A.

If, at the time of this transaction, the man who was in correspondence with the plaintiff had been the only man in Saratoga Springs known as, or who called himself, A. Swannick, it cannot be doubted that it would have been the defendant's duty to deliver the goods to him according to the direction, although he was an impostor, who by fraud induced the plaintiff to send the goods to him. *Dunbar* v. *Boston & Providence Railroad*, 110 Mass. 26. The fact that there were two bearing the name made it the duty of the defendant to ascertain which of the two was the one to whom the plaintiff sent the goods.

Suppose, upon the arrival of the goods in Saratoga Springs, the impostor had appeared and claimed them; to the demand of the defendant upon him to show that he was the man to whom they were sent, he replies, " True, there is another A. Swannick here, but he has nothing to do with this matter; I am the one who ordered and purchased the goods; here is the bill of the goods, and here is the letter notifying me of their consignment to me, addressed to me at my P. O. box 1595." The defendant would be justified in delivering the goods to him, whether he was the owner or not, because he had ascertained that he was the person to whom the plaintiff had sent them. It is true the defendant did not make these inquiries in detail; but if, by

a rapid judgment, often necessary in carrying on a large business, he became correctly satisfied that the man to whom he made the delivery was the man to whom the plaintiff sent the goods, his rights and liabilities are the same as if he had pursued the inquiry more minutely.

The plaintiff contends that he intended to send the goods to Arthur Swannick. It is equally true that he intended to send them to the person with whom he was in correspondence. We think the more correct statement is, that he intended to send them to the man who ordered and agreed to pay for them, supposing erroneously that he was Arthur Swannick. It seems to us that the defendant, in answer to the plaintiff's claim, may well say, we have delivered the goods entrusted to us according to your directions, to the man to whom you sent them, and who, as we were induced to believe by your acts in dealing with him, was the man to whom you intended to send them; we are guilty of no fault or negligence.

The case at bar is in some respects similar to the case of *M'Kean* v. *M'Ivor*, L. R. 6 Ex. 36. There the plaintiffs, induced by a fictitious order sent to them by one Heddell, an agent of theirs to procure orders, sent goods by the defendants, who were carriers, addressed to " C. Tait & Co., 71 George Street, Glasgow." There was no such firm as C. Tait & Co., but Heddell had made arrangements to receive the goods at No. 71 George Street. Upon the arrival of the goods, the defendants, in the usual course of business, sent a notice to 71 George Street for the consignee to call for the goods, the notice saying that it ought to be indorsed so as to operate as a delivery order. Heddell indorsed the notice in the name of " C. Tait & Co.," and sent it to the defendants by a carter, to whom the goods were delivered. It was held that the defendants were not liable, upon the ground that no negligence was shown, and that, having delivered the goods according to the directions of the plaintiff, they had performed their duty; and the fact that they delivered to some person to whom the plaintiff did not intend delivery to be made, was not sufficient to make them liable for a conversion. See *Heugh* v. *London & North Western Railroad*, L. R. 5 Ex. 51; *Clough* v. *London & North Western Railroad*, L. R. 7 Ex. 26.

The cases of *Winslow* v. *Vermont & Massachusetts Railroad*, 42 Vt. 700, *American Express Co.* v. *Fletcher*, 25 Ind. 492, and *Price* v. *Oswego & Syracuse Railway*, 50 N. Y. 213, differ widely in their facts from the case at bar, and are distinguishable from it.

Upon the facts of this case, we are of opinion that the defendant is not liable, in the absence of any proof of negligence ; and therefore that the rulings at the trial were sufficiently favorable to the plaintiff.\* *Exceptions overruled.*

---

\* The plaintiff requested the judge to rule that on the facts, which were undisputed and agreed, he was entitled to a verdict. The judge refused so to rule. The plaintiff then requested the judge to rule that, if the jury believed that in shipping these goods the plaintiff intended as the consignee A. Swannick, the person who was well rated in the commercial agency books, and that that intent was properly expressed in the address on the packages, and that the name of the person to whom delivery was in fact made was not A. Swannick, they must find a verdict for the plaintiff. The judge refused so to rule, and instructed the jury that, the intent of the plaintiff being uncommunicated to the defendant, except so far as expressed in the address on the packages, was of itself of no importance, and that if the delivery was made to a person who was known at Saratoga Springs by that name and no other, that was enough, so far as the question of name affected the legal result. The judge then left the single question to the jury, as to whether the defendant acted negligently in making the delivery he did, instructing them further that, although there was no question that there was a misdelivery of the goods in suit, the only question was, whether the defendant was guilty of negligence in making this misdelivery.