William A. Wilson & Company, Respondents, v. The Adams Express Company, Appellant.

#### Kansas City Court of Appeals, October 24, 1887.

Action for Conversion—Misdelivery of Goods—Carrier's Liability—Case Adjudged.—Where two men, of the same name, live in the same town, and one of them orders goods from a merchant at a distance, as in this case, and the carrier delivers the goods to the man of that name who had really made the order, the carrier is not to be held responsible, simply because the consignor thought his order was from the other of the two men. The carrier is responsible for a correct delivery, but he is not the guardian of his patrons, nor, when faultless himself, must he answer for their mistakes, or mend their misfortunes. If the name used was assumed by a swindler, the carrier would not be liable in the absence of proof of negligence. The only liability that can exist in this case is such as would arise from the negligence of the carrier in the delivery ; or, being aware of the fraud, failed to thwart it by holding the goods ; or, if proper care, on its part, would have led to a discovery of the fraud.

Appeal from Jackson Circuit Court, Hon. Turner A. Gill, Judge.

*Reversed and remanded.*

The case and facts are stated in the opinion of the court.

W. J. Ferry and Chas. W. Blair, for the appellant.

I.   The defendant delivered the goods upon reason-

able identification, considering the nature of the express business, without neglect of any duty imposed upon it, and, in the absence of negligence connected with the shipment or delivery, is not liable. *Steamboat v. Moies*, 28 Mo. 243; *Express Co. v. Van Meter*, 17 Fla. 783; s. c., 35 Am. Rep. 107; 15 Fed. Rep. 826; *Price v. Railroad*, 50 N. Y. 213; s. c., 10 Am. Rep. 477–8; *Samuel v. Cheney*, 135 Mass. 278.

II. The goods were delivered according to the custom of express business, in regard to identification and delivery, and what that custom is the testimony shows. *Bartlett v. Steamboat*, 32 Mo. 259.

III. The express company delivered to the identical person who had bought the goods, and who, as between carrier and consignee, was the owner thereof. *The Drew case*, 15 Fed. Rep. 826; *Dunbar v. Railroad*, 110 Mass. 26; *Samuel v. Cheney*, 135 Mass. 278; *Edmonds v. Transportation Co.*, 135 Mass. 283.

IV. The express company is liable for mistakes made by itself, or frauds of which it has been the victim, but is not liable for frauds practiced upon the shipper, or mistakes made by him. 15 Fed. Rep. 825.

V. In this case, when the defendant tendered these goods to F. H. Davis, the old established merchant of La Cygne, to whom the plaintiff herein claims that he intended to sell them, its obligation, as a carrier, ceased, and it became an ordinary warehouseman or bailee, liable only for ordinary care and prudence. 3 Wood's Ry. Law, p. 1594, sect. 1445; *Weel v. Barney*, 45 N. Y. 344; s. c., 6 Am. Rep. 97; Hutchinson on Carriers, sects. 351, 354.

VI. No particular form of words is necessary to make a tender, but any act or word, showing the intent of the party to make it, will be construed by the law as equivalent to a formal tender. *Zinn v. Steamboat Co.*, 49 N. Y. 455.

Scammon & Stubenrauch, for the respondent.

I.    The appellant, an express company, being engaged in the business of a common carrier, undertaking both the carriage and personal delivery of goods, is an insurer of both the safe carriage and the proper delivery of the goods entrusted to it, and is, therefore, liable to the repondent for his loss herein.    *Price v. Railroad*, 50 N. Y. 213 ; s. c., 10 Am. Rep. 475 ; *Winslow v. Railroad*, 42 Vt. 700 ; s. c., 1 Am. Rep. 365 ; *Stephenson v. Hart*, 4 Bing. 476 ; 13 E. C. L. 596 ; *Land Co. v. Fletcher*, 25 Ind. 492 ; s. c., 29 Ind. 27 ; *McEntee v. Steamboat Co.*, 45 N. Y. 34 ; s. c., 6 Am. Rep. 28 ; *Van Meter v. Express Co.*, 17 Fla. 783 ; s. c., 35 Am. Rep. 107 ; *Railroad v. Adams*, 46 Texas, 748 ; s. c., 30 Am. Rep. 116 ; 2 Kent's Com. 604 ; *Kirby v. Express Co.*, 2 Mo. App. 369–377 ; *Adams v. Blankenstein*, 2 Cal. 413 ; s. c., 56 Am. Dec. 350 ; *Ostrander v. Brown*, 8 Am. Dec. 211, note, p. 218 ; s. c., 15 Johns. 39 ; *Levenny v. Transportation Co.*, 42 Mo. 88–94–5 ; *Baldwin v. Express Co.*, 23 Ill. 197 ; s. c., 74 Am. Dec. 190 ; also notes to case as reported in Am. Dec. ; *Daggett v. Shaw*, 3 Mo. 264 ; Hutchinson on Carriers, sects. 343–352, and cases cited ; *Bartlett v. Steamboat Co.*, 32 Mo. 356.

II.    Even though the appellant was not to be held liable as an insurer of delivery, as well as of the carriage of the goods in question, and ought not to be so held except where guilty of a lack of ordinary care and caution, still the appellant here was guilty of such gross negligence in the delivery of these goods as to justify a recovery against it upon that ground alone, apart from the settled principle contained in our first proposition. *Railroad v. Adams, supra ;* 30 Am. Rep. 121.    These goods were never offered to F. H. Davis.    All the express agent at La Cygne did was to ask Davis' clerk whether Davis was expecting any goods by express.    The party to whom the goods were delivered was a total

stranger to the agent. He exhibited to the agent no shipping receipt nor bill of lading. He didn't ask him to exhibit any. He exhibited to him no bill for the goods, as Wilson swears the bills were both returned to him. The agent made delivery of the goods immediately upon the arrival of the train, while the goods were yet on the platform. The agent did not make of him a single inquiry as to where he was located, when he came, who he was, or what he was doing. A case of grosser neglect of duty, or greater disregard of the rights of a customer can hardly be conceived.

III.  No custom was shown, as was sought to be shown, in any way relieving the company of its common-law liability. Bouvier's Law Dict., title Custom ; 2 Parsons on Contracts, 543, *et seq.* Merely showing the usage of defendant, where that usage was not brought home to the shipper, was incompetent as evidence. So, also, was it incompetent to show a usage justifying the defendant in the negligent delivery of plaintiff's goods. Such a custom being unreasonable could not have the sanction of a rule of law.

IV.  There was never any tender of the goods to F. H. Davis, to whom they were directed, as appellant claims. Bouv. Art. Tender, 2 Bouv. Dic., defines a tender to be "an offer to deliver something made in pursuance of some contract or obligation under such circumstances as to require no further act from the party making it to complete the transfer." Davis says that the company did not offer to deliver the package to him, while the drayman says that he asked a German working in Davis' store, if Davis had any cigars expressed, and the German said, "No." There was no pretense of an offer of delivery of the goods to the well-known person to whom the goods were directed. The testimony is uncontradicted on this point.

V.  The *Drew case*, cited by appellant (15 Fed. Rep. 826), is distinguishable from the case at bar. The party to whom the goods were delivered had a store in the town, and bore the name to which the goods were addressed,

and a tender was made of the goods to the only other person in town who had a like name, and the goods were refused ; besides, the party who received the goods was the very party who ordered them.   He did not stand in the attitude of the "per M." in this case.   The case of *Samuel v. Cheney* (135 Mass. 278), also cited by appellant, is of the same character in facts as the *Drew case*, and likewise distinguishable.   The case of *Dunbar v. Railroad* (110 Mass. 26), is likewise distinguishable from this case.   In that case, John F. Gorman, who purchased the goods, received them from the company.   In the case at bar, Davis bought the goods, if any one purchased them at all.   Certainly "per M." never purchased them, for the respondent never thought of selling them to him. But even were these Massachusetts cases not distinguishable from the case at bar, still we should insist they were wrong in principle.   They fail to note the long-established fundamental rule that the liability of a carrier is that of an insurer for delivery as well as for carriage, and they put the matter of liability or non-liability on the ground of negligence or non-negligence, where this rule does not permit it to be placed.   Against this doctrine held by the Massachusetts courts, stand the courts of New York, England, Illinois, Missouri, Texas, Florida, and Indiana.   Both reason and the weight of authority are clearly against that theory for which the appellant contends.

Ellison, J.—Plaintiff sues defendant for the conversion of a lot of cigars.   The conversion is based on a misdelivery of the goods.   The facts are, the plaintiff shipped the goods upon the receipt of the following letter :

"La Cygne, Linn Co., Kan., Oct. 1, 1884.
"Wm. A. Wilson & Co.,

"Gentlemen :   This being fair week, and my stock getting very low, I would like you to ship me via first express, 3 M. Quakeress cigars : 2 M. Colorado Maduro ; 1 M. Maduro.   If you have not the brands asked for,

please send me something that will give as good satis-
faction, and draw on me at sixty days.

"Yours truly,

"F. H. DAVIS."

The consignment was made, as indicated by the let-
ter, to "F. H. Davis, La Cygne, Kan." Plaintiff had
never had any dealing with a man by that name, and
made inquiry for his name and standing in the usual
commercial channels, and thus learned that there was a
man by that name in business in La Cygne, Kansas, of
good financial and commercial standing. It appears,.
from the evidence, that there were, at that time, at that
place, two men of that name, one a resident merchant,
the other a stranger and swindler, who was running a.
booth at the fair, then going on at La Cygne. It was the·
swindler who ordered the goods. There is some question
made in the case as to whether Davis was his real name,
but the evidence indicates he went under that name at
that time.

When the goods arrived at La Cygne, the swindler,
who had ordered them as before stated, presented him-
self as the consignee, and demanded them. The defend-
ant's agent, not knowing him, but knowing the merchant,
sought the latter and learned from his clerk that the·
goods were not for him. The swindler then produced a
letter from plaintiff addressed to F. H. Davis, contain-
ing a bill of the goods. The postmaster had delivered
this letter to the merchant, who had opened it and
endorsed thereon, "opened by mistake," and returned
it to the postoffice. It was afterwards delivered to the·
swindler. The following extract from the agent's testi-
mony explains the delivery of the goods :

"Q. State what occurred when you received these
packages of cigars, October 2, 1884, in regard to their·
delivery. A. After the goods had been put off of the·
car, a man calling himself F. H. Davis said, 'Those are·
my goods,' speaking of the cigars. I said, 'No, sir, they

belong to F. H. Davis, of La Cygne.' He said, 'That is my name, F. H. Davis, and those cigars belong to me.' He furthermore stated, 'and I expect another package soon for the same name.' I then demanded of him a receipt for those goods. I mean the agent's receipt at shipping point, Kansas City. His reply was, that they didn't have to have a receipt from an agent; that he had been receiving goods, and had not been asked for a receipt by other agents. I then told him he would have to be identified in some way before he could have those cigars. He replied, 'I have a bill of the goods, which I think is proper identification,' or some such language, and at the same time produced a letter from his pocket which had been opened, addressed to F. H. Davis, La Cygne, Kansas, and showed me a bill taken from this letter, threw it on my table, and said, 'I think this should be proper identification.' The letter had been stamped as though it had gone through the mail. I opened this letter and compared the name in the letter and the name on one package, and it was the same, Wilson & Co. I only looked at the top package of the three packages of cigars. I won't be certain whether this conversation took place before I sent the drayman over to Mr. Davis' store, or afterwards. Lewis Parks, the drayman, was present when the conversation occurred. I requested him to go and ask F. H. Davis, our merchant, if he was expecting any cigars, and tell him we had some cigars marked 'F. H. Davis, La Cygne, Kansas.' He went up and came back, and replied to me that F. H. Davis, our merchant, was not in, but that the clerk, Adolph, replied that he was not expecting any cigars, or that they were not, but I don't remember which. And upon that report, and the production of the invoice spoken of before, I delivered him the cigars.'"

I. This is a sufficient statement of the facts for a full disposition of the questions presented. Instructions were given for plaintiff, holding defendant liable, abso-

lutely, without regard to the question of due care, good faith, or negligence.    They are as follows:

" 1.    If the court finds, from the evidence, that the defendant received and undertook to convey plaintiff's goods from Kansas City, Missouri, to La Cygne, Kansas, and there to deliver the same to F. H. Davis, and that the defendant, a reasonable time having elapsed there-for, has failed to do so, then the plaintiff is entitled to recover from the defendant the reasonable value of such goods, with interest at six per cent."

"2.    It is no defence to this action that the defend-ant delivered the goods of plaintiff to a person falsely or fraudulently assuming the name of the person named as the consignee thereof."

The foregoing statement of facts shows clearly that the defendant delivered the goods to the party who ordered them.    To state it in a different way: a man going by the name of F. H. Davis ordered the goods, and to this man the defendant made delivery.

If two men of the same name live in the same town, and one of them orders goods from a merchant at a distance, and the carrier delivers the goods to the man of that name who had really made the order, is such carrier to be held responsible, simply because the con-signor thought his order was from the other of the two men?    No case has gone to this extreme.    The carrier is responsible for a correct delivery, but he is not the guardian of his patrons, nor, when faultless himself, must he answer for their mistakes or mend their misfortunes.

II.    It may be that, on a retrial of this cause, plain-tiff will be able to prove that the name, F. H. Davis, was assumed by the swindler.    The question would then be, is defendant liable in the absence of proof of negligence? I am of the opinion it would not be.    The question is one of general interest as well as of great importance to com-mercial business.    It has not been discussed in our own courts, though it has met with judicial determination elsewhere.

The case of *Samuel v. Cheney* (135 Mass. 278), is much like the present one. The facts of that case were, that a swindler, assuming the name of A. Swannick, sent a letter to the plaintiff asking for a price list of cigars, and giving his address as "A. Swannick, P. O. box 1595, Saratoga Springs, N. Y." Plaintiff replied. The swindler then ordered the cigars. The plaintiff forwarded the cigars by a carrier, and at the same time sent a letter to the swindler, addressed as above, notifying him that he had forwarded the goods. There was, at the time, in Saratoga Springs, a reputable dealer in cigars, named Arthur Swannick, who had his shop at the corner of Ash and Franklin streets and who did business as "A. Swannick." He was in good credit, and so reported in the commercial agency, of whom plaintiff made inquiry before sending the goods. No other A. Swannick appeared in the Saratoga directory for 1881. But in June of that year, a man hired a shop at number 16, Congress street, Saratoga Springs, under the name of A. Swannick, and also hired a post-office box, numbered 1595, and used printed letter-heads with his name printed as "A. Swannick, P. O. box 1595." This man wrote the letters to plaintiff referred to above and received the answer sent by plaintiff. He soon after disappeared. The plaintiff supposed his correspondence was with Arthur Swannick, the reputable dealer. He sent the goods by defendant, directing them, "A. Swannick, Saratoga Springs, N. Y." The defendant took the cigars to the reputable dealer and offered them to him, but he refused them on the ground that he had ordered none. Afterwards, he carried them to the "A. Swannick," at number 16, Congress street, delivered them to the person appearing to be the occupant of the shop, who receipted for them as "A. Swannick."

We have been thus particular in stating the facts of that case, to show how nearly it fits the one under consideration. The court assumed "that his real name was not A. Swannick, but that he fraudulently assumed

this name in Saratoga Springs, and in his dealings with the plaintiff." It is there held that the carrier was not liable for a misdelivery; on the contrary, the court hold there was no misdelivery.

The court make use of the following language, which is specially applicable to the facts in this case, viz: "Suppose, upon the arrival of the goods at Saratoga Springs, the impostor had appeared and claimed them; to the demand of the defendant upon him to show that he was the man to whom they were sent, he replies: 'True, there is another A. Swannick here, but he has nothing to do with this matter; I am the one who ordered and purchased the goods; here is the bill of the goods, and here is the letter notifying me of their consignment to me, addressed to me at my post-office box 1595.' The defendant would be justified in delivering the goods to him, whether he was the owner or not, because he had ascertained that he was the person to whom the plaintiff had sent them."

In that case, as in this, the carrier sought out the other party and did not deliver to the impostor until there had been a refusal by the other. But it will be noticed that the court excuses the carrier, if the supposed case had been a reality, without reference to the question of his first seeking the party thought to be the purchaser by the plaintiff, for the reason that the goods were delivered to the party to whom they were addressed and who made the purchase. The supposed facts, as put by the court in that case, were actual facts in this case.

It is contended in the case at bar, as it was in the case cited, that plaintiff intended to send the goods to the other party, but the fact is, as was remarked in the case cited, he intended to send them to the man who ordered them, supposing, erroneously, that he was the other man. The truth of the whole matter is, that plaintiff shipped the goods on the order of, and to, the man to whom the defendant delivered them. That he was

mistaken as to who that man was, is a misfortune which he ought not, in justice, to be allowed to unload on the shoulders of defendant, unless defendant has been guilty of negligence in the delivery.

The views here advanced find ample support in *Dunbar v. Railroad* (110 Mass. 26) ; *Schneider v. American Ex. Co.* ( N. Y. Supreme Court, Dec. 3, 1885, reported in Daily Register) ; *The Drew case* (15 Fed. Rep. 826). The authorities cited by plaintiff have been under review in some of the cases above referred to, and it is said they all turn on the question of negligence. One of the strongest cases to which our attention has been called is that of *Price v. Railroad* (50 N. Y. 213), but it is there stated by the court that "defendant delivered them ( the goods ) to a stranger, without making any inquiry as to who, or what, he was, simply upon his inquiring for the goods." No effort whatever was made to find out the consignee or the identity or right of the stranger asking for them.

Holding the view that defendant, as a carrier, delivered to the party to whom the goods were shipped, we need not consider the question as to its liability as a warehouseman. The only liability that can exist in this case would be such as would arise from the negligence of defendant in the delivery—that is, if defendant was aware of the fraud practiced on plaintiff and failed to thwart it by holding the goods ; or, if proper care in the delivery on defendant's part would have led to a discovery of the fraud, a liability would attach. As to whether such care was used, under all the circumstances, is a question of fact.

The judgment is reversed and the cause remanded. All concur.

Philips, P. J., Concurring.—I concur in reversing this case, on the ground that the instructions given by the court indicate that it ignored the question of negligence on the part of defendant's servant. If it had been

made clearly to appear that the agent did nothing more than to call on the known merchant, F. H. Davis, and then turned the goods over to the impostor, on his mere statement, without more, that he was the rightful party, I should have voted to affirm the judgment. But there was evidence, as shown by the record before us, tending to show that the impostor accompanied his demand for the goods with an exhibition of the letter of invoice from plaintiff. If that was the fact the instructions were wrong. If, in fact, the letter from plaintiff was not so exhibited, the defendant has, in my opinion, no defence.