•••Sibley, J.
The''1 facts stated, are the basis for two points of contention. The first is,that the delivery of these goods to a person not intended by the consignors, was per se a conversion, notwithstanding he had ordered them, and at the place of destination went by the name in which they were shipped. Rut if this consequence be held not to follow simply from thus delivering the goods, the second proposition is, that such negligence is shown to have accompanied the act as,in law, to work the same result, and so make the Express Co. liable for their value.
I. “Common carriers deliver property at their peril,and must take care that it is delivered to the right person,for, if the delivery be to the wrong person,either by an innocent mistake, or through the fraud of third persons, as upon a forged order, they will be responsible, and the wrongful delivery will be treated as a conversion.” (McEntee v. N. J. S. Co., 45 N. Y., 37.)
In determining, however, who is the right person, in case of an alleged wrongful delivery, it is to be borne in mind,
“That the contract of the carrier is not that he will ascertain who is the owner of the goods and deliver them to him,but that he will deliver the goods according to directions. If a *181 roan sells goods to A., and by mistake directs them to B., the carrier’s duty is performed if he delivers them to B.,although the unexpressed intention of the forwarder was, that they should be delivered to A.” (Samuel v. Cheney, 135 Mass., 281.)
The doctrine, so stated, is also asserted by the supreme court of the United States, in different words, but with equal explicitness. “The undertaking of the carrier to transport goods, necessarily includes the duty of delivering them. They are to be delivered at the place of destination, to the party designated to receive them, if he presents himself, or can with reasonable efforts be found, or to his order.” (North P. R. R. v. Com. Bank, 123 U. S., 734.)
The principles thus “brought into view, are in ordinary cases decisive, and in a vital feature show the ground for a decision of the controversies arising upon this record. The single question left open, is in respect to their application, where, as here, the directions for delivering goods, or designation of the party to receive them, describes either of two persons, one of whom gave the order for the goods, while the consignors mistakenly supposed they were selling and shipping them to the other.
Disregarding the other circumstances, a right of recovery in this action is first predicated upon the proposition, that, the intention of the shippers is the controlling fact, and hence a delivery in contravention of it, was a conversion of the goods by the Express Co. For this contention, Cundy v. Lindsey, (3 App. Ca., 465,) is cited. But the case is not in point except upon the assumption that, in order to exempt the Express Co. from liability, the delivery must have passed the title? to Rothschilds. It was not a controversy of the shipper with the carrier, but between him and a party that bought the goods of an imposter, who got possession of them unaer circumstances very like those here involved, and the House of Lords ruled that as it was never the *182 intention of the consignors to sell or send them to the imposter, the title did not pass. Consequently the purchasers were held in trover for their value. That is not the question for decision here, however, “because,” says a court of great authority,commenting on Cundy v. Lindsey, in a case before it, at all fours with this, the “liability” of the “common carrier does not necessarily turn upon it. ” (Samuel v. Cheney, 135 Mass., 278.) Nor is the Gundy case aided at this point by anything in Hamet v. Letcher, (37 Ohio St., 356.) The controversy there, in no way touches the questions decided in Samuel v. Cheney,supra, nor is it intimated that the rule of the English adjudication would be applied to a case like this. Neither,therefore,as we think is relevant to the point now under consideration. Closer, perhaps, in its application, is Pacific Ex. Co. v. Shearer, (160 Ill., 215-52, Am. St., 324, ) also relied upon. This was decided by a divided court, and the facts are materially different from those before us. There, a telegram for $4,000 was sent by an imposter to Shearer, in the name of a responsible person with whom the latter had dealings. Believing it genuine, he sent the money by an Express Co.,whose agent delivered it to the man who had wired for it, at the place of destination, which, however, was not the residence of the one whose name had been fraudulenly used. The Express Co. was held liable for a wrongful delivery, The decision seems to be put upon the ground that the money was obtained by forgery, and so the same principle would apply as. in case of delivery got by forging the name of a consignee. It possibly -may stand, also, upon the carrier’s negligence. In either view, it is distinguishable from this case, which, in the aspect now presented, clearly falls into the class holding that “if two men of the same name, live in the same town, and one of them orders goods from a merchant at a distance, and the carrier delivers the goods to the man of that name who had really made the order, the carrier is *183 not to be held responsible simply because the consignor-thought his order was from the other of the two men.” (Wilson v. Ad. Ex. Co., 27 Mo. App., 360; Samuel v. Cheney, 135 Mass., 278; 9 Am. St., 514.) This conclusion is also well supported by “the principle of equity that where-one of two innocent parties must suffer from the fraud of a third, the loss should fall on him who enabled such third party to commit the fraud.” (Hamet v. Letcher, 37 Ohio St., 359; Dean v. Yates, 22 Ohio St., 396.)
II. On the remaining question as to the negligence in the delivery,how stands the case with reference to the facts? Rothschilds was known in Hopkinsville, as T. M. Jones.. The merchant resident there was of the same name. The-designation in the “terms of the shipment” therefore, was-alike applicable to either of the two. One had given the order on which the goods were sent, and to him, after inquiry sufficient to satisfy of that fact, the agent of the Express Co., delivered them. As against the carrier, then,, upon what ground of justice can the shippers say that T. M. Jones, whose order they received and acted on, is not the-party “designated to receive them?” His name was not fictitious. The case, therefore, is manifestly the same as it would be had it been Rothchilds’ truéname, and two T. M, Joneses,one of whom recently came to the place, were there. Now, is it reasonable to permit the consignors to unload the loss primarily caused by their mistake respecting the person with whom they dealt, upon the carrier, who finds that party, and without notice of the error, delivers the goods to-him.? We think not. And emphatically so, when the conduct of Oskamp,Nolting & Co. is taken into account. They were strangers to T. M. Jones, of Hopkinsville, save as by the book of a commercial agency, they found him to be-there in the “general merchandise business.” Had they, in view of that fact, addressed the packago to him with the-descriptive addition of “merchant,” or“dry-goods dealer,”' *184 instead of the naked name of T. M. Jones, the case would be quite different. Besides, we cannot doubt that by a precaution so simple as this,and one which,under these circumstances, ordinary business prudence clearly dictates, the scheme of fraud would have been frustrated, and all serious loss prevented. Apparently, then, there is much better ground for predicating a wrongful delivery upon negligence of the shipper than of the carrier, Or, looking at the facts in another view, the consignors are by their own acts estopped from saying that the goods were not given to the party designated to receive them. Against this, however, it is urged that had the Express agent refused a delivery until he' could communicate with the consignors, the fraud would have been exposed, and loss avoided. His failure to do so, is therefore said to be a lack of care which will make the carrier liable. But, allowing that in this instance,the course suggested might have been effectual in defeating the scheme by which Rothschilds got the goods, was it the agent’s duty to pursue it? There is nothing to show that he' had reason to suspect the good faith of Rothschilds, who, in fact, was the T. M. Jones that ordered, was expecting,and demanded the goods. If it turned out that he was entitled to them,the refusal to deliver, even if qualified, might subject the company he was serving, to an action for their conversion. (McEntee v. N. J. S. Co., 45 N. Y., 34.) Now,as a practical matter of business, is it just, or required by sound policy, that after finding the purchaser, who answers also to the description in the directions of the shippers, their undisclosed intention shall compel the carrier to assume such a burden, with its contingent liabilities,or be responsible to them ás for a wrongful delivery? On the facts presented by this record, in our opinion, not. While in some instances that obligation might arise, the grounds for it are not here apparent. Nor does this case fall within the rule of decisions in which, where a purchaser has personated some fictitious person to *185 whom the goods were addressed, and the carrier delivered, them to a stranger without inquiry as to who or what he1 was, simply upon their being asked for, it has been held liable on the ground of negligence. (9 Am. St., 514; Price v. O. R. Co., 50 N. Y., 213; Winslow v. Vt. R. R. Co., 42 Vt., 700; So. Ex. Co. v. Van M., 17 Fla., 783; H. R. R. Co. v. Adams, 49 Tex., 748.) The discussion need not,, however, be prolonged. In a case, covering this like a-blanket, the opinion contains a passage, which so strongly expresses the proper view to be taken of the controversy here, that we transcribe it. There, an impostor assumed the-name of one A. Swannick, residing at Saratoga Springs,asRothschilds did that of T. M. Jones, of Hopkingville, and thus was enabled to obtain a delivery of goods exactly asRothschilds succeeded in doing. In an action against the-carrier, for a wrongful delivery, recovery was denied the consignor, the court saying: “Suppose upon the arrival of the goods in Saratoga Springs, the impostor had appeared and claimed them; to the demand of the defendant upon-him to show that he was the man to whom they were sent,, he replies: “True, there is another A. Swannick here, but he has nothing to do with this matter; I am the one who-ordered and purchased the goods; here is the bill of the-goods, and here is the letter notifying me of their consignment to me.” The defendant would be justified in delivering the goods to him, whether he was the owner or not, because he had ascertained that he was the person to whom the plaintiff had sent them. It is true, the defendant did not make these inquiries in detail; but if by a rapid judgment, often necesary in carrying bn a large business, he became correctly satisfied that the man to whom he made the delivery, was the man to whom the plaintiff sent the goods, his-rights and liabilities are the same as if he had pursued the-inquiry more minutely. The plaintiff contends that he intended to send the goods to Arthur Swannick. It is equally *186 Irue that he intended to send them to the person with whom he was in correspondence. We think the more correct statement is, that he intended to send them to the man who ■ordered and agreed to pay for them, supposing erroneously, that he was Arthur Swannick. It seemsYo us, that the defendant, in answer to the plaintiff’s claim, may well say, we have delivered the goods intrusted to us, according to your ■directions, to the man to whom you sent them, and who, as we were induced to believe by your acts in dealing with him, was the man to whom you intended to send them; we are .guilty of no fault or negligence.” (Samuel v. Cheney, 135 Mass., 281.) The able note by Mr. Freeman, (9 Am. St., 513,) in which he analyzes the adjudications upon the liability of carriers for ‘‘delivery to a wrong person,” and classifies them by their different facts, agrees with the result at which we arrive, in a case like this. To the same effect is Lake etc., R. R. Co. v. Luce & Co. (11 Ohio Cir. Ct., 343.)
Arthur A. Clark, (Chillicothe,Ohio,) Qholson & Cabell, ■(Cincinnati, Ohio,) for Plaintiff.
A. B. Cole, (Chillicothe, Ohio,) for Defendants.
'Our conclusion obviously renders consideration of the •amount of recovery, which might arise upon a different holding, wholly needless.
We are compelled to say then, that the finding below is not sustained by the evidence. The judgment of the common pleas is therefore reversed, and a new trial awarded.