MILTON S. PRICE, Appellant, *v.* THE OSWEGO AND SYRACUSE RAILWAY COMPANY, Respondent.

Where a common carrier without requiring evidence of identity delivers goods to a stranger, which have been fraudulently ordered by the latter in the name of a fictitious firm, and which have been shipped in compliance with the order directed to the fictitious firm, he is liable to the consignor for their value. (CHURCH, Ch. J., dissenting.)

(Argued June 6, 1872; decided November 12, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of defendant, entered upon the report of a referee. (Reported below, 58 Barb., 599.)

The action was brought against defendant as common carrier to recover the value of three bales of bags shipped by plaintiff at Syracuse, consigned to S. H. Wilson & Co., Oswego. The facts are stated sufficiently in the opinion.

*D. Pratt* for the appellant. Defendant was guilty of negligence in delivering the goods to an unknown person without requiring the customary evidence of his identity. (*Stevenson* v. *Hart*, 4 Burg., 476; *Duff* v. *Budd*, 3 Brod. & B., 177; *Berkett* v. *Willan*, 2 Barn. & Ald., 356; *Winslow* v. *The Verm. and Mass. R. R. Co.*, 42 Vt., 706; 1 Amer. R., 365; *Fletcher* v. *Amer. Ex. Co.*, 25 Ind., 493; *McKeon* v. *McIvor* [L. R.], 6 Exe., 36; Alb. Law Jour., March 4, 1871, p. 164.) Defendant is liable for delivering the property to a party other than to the party to whom it was consigned.

(*Fisk* v. *Newton*, 1 Den., 45 ; Story on Bailm., 545, *b ; Powell* v. *Myers*, 26 Wend., 591; *Stephenson* v. *Hart, supra ; Duff* v. *Budd, supra ; Winslow* v. *Verm. and Mass. R. R. Co., supra.*)

*Edwin Allen* for the respondent. Any delivery which discharges the carrier as between him and the consignee is good and valid as against the consignor. (*Sweet* v. *Barney & Co.*, 23 N. Y., 335 ; 11 Metc. R., 509.) The defendant, as common carrier, is not liable for a wrongful or negligent delivery of the goods, under the proof and findings. (*Hugh* v. *The London and Northern R. R. Co.*, 5 Law R., 57 Exc.; *Duff* v. *Budd*, 3 Brod. & Bing., 177 ; *Stephenson* v. *Hart*, 4 Bing., 476 ; *Burnell* v. *N. Y. C. R. R. Co.*, 45 N. Y., 480 ; *Grant* v. *Morse*, 22 id., 323 ; *Oberlander* v. *Spiess*, 45 id., 179.)

GROVER, J. The referee found as a conclusion of law, from the facts found, that the defendant having delivered the bags to the person who made the order for them (although in the name of a fictitious firm) without notice of the fraud, was not liable to the plaintiff therefor. To this conclusion the appellant excepted. The counsel for the respondent insists that if the legal conclusion is not sustained by the facts found, the court will assume that he found such additional facts as were necessary for that purpose. This position is correct, subject, however, to the qualification that it must appear from the case that such additional findings would have been warranted by the evidence. (*Oberlander* v. *Spiess*, 45 N. Y., 175.) In the present case there was no evidence warranting the finding of any additional facts sustaining the legal conclusion. The question, therefore, is whether such conclusion is sustained by the facts found. The facts (so far as material) found were : That the plaintiff, on and prior to September, 1866, was a dry-goods merchant, doing business in Syracuse. That the defendant was a common carrier of goods between Syracuse and Oswego. That a few days prior to the 10th of September, 1866, Caleb B. Morgan, a resident of Syracuse, received a let-

ter by mail, dated and mailed at Oswego, directed to him at Syracuse, signed S. H. Wilson & Co., inquiring the price of bags. That Morgan had been a dealer in bags, but had given up the business, and upon receipt of the letter he delivered the same to the plaintiff, who kept bags for sale, and requested the plaintiff to inform him of the price of the said bags. That Morgan did not know any person or firm by the name of S. H. Wilson & Co., nor had he heard of any such person or firm, but delivered the letter to the plaintiff, believing it had been written in good faith in the ordinary course of business by a firm wishing to purchase bags. That the plaintiff upon receipt of the letter gave to Morgan the prices of bags, who communicated them in a letter, addressed and mailed by him to S. H. Wilson & Co., Oswego. That afterward, and on the 10th or 11th of September, the plaintiff received through the post-office at Syracuse a letter, mailed at Oswego, as follows :

"OSWEGO, *Sept.* 10, 1866.

"Mr. MILTON PRICE.—*Sir :* We are in want of some bags, and wrote Mr. Morgan, supposing he was in the trade, and he has quoted your prices for stock, etc. Please send us by rail 100 of each, and hope you can make the price a little less, and will be able to give you a larger order soon. Please send bill by mail, and we will remit check for amount of same.

"(Signed)    S. H. WILSON & CO."

That on the 13th September, 1866, the plaintiff, with a view of complying with the order, delivered to the defendant at Syracuse three bales of bags, of the value of $205, directed to S. H. Wilson & Co., Oswego, and the defendant undertook, as a common carrier, to carry the bags to Oswego, and there deliver them to the consignees, and also mailed a bill of the bags to S. H. Wilson & Co., Oswego. That the defendant carried the bags to Oswego the same day, and soon after their arrival at Oswego and on the same day, a man called at the office of the defendant there, and asked defendant's agent if three bales of bags, directed to S. H. Wilson & Co., had arrived. He was informed that they had, and he then said

they were what he wanted, and offered to and did pay the freight thereon, and they were delivered to him by the agent of the defendant upon signing a receipt therefor in the name of S. H. Wilson & Co., and they were taken away. That the plaintiff did not know any person or firm by the name of S. H. Wilson & Co., and had no information of any such person or firm, except what was contained in their letter to him of September 10th and in the letter to Morgan. In fact, there was no such firm of S. H. Wilson & Co. in business at Oswego or elsewhere, and the letters written in the name of S. H. Wilson & Co. and the order were a part of a scheme on the part of some person or persons to defraud the plaintiff of his property, and no part of the purchase price has been paid, nor has the property been recovered or the person who received the same from the defendant been traced. That the defendant, when said bags were received and delivered, did not know any person or firm by the name of S. H. Wilson & Co., nor did the defendant know the person to whom the bags were delivered, nor did they require any evidence of the identity of the person or of his being connected with the firm of S. H. Wilson & Co. That it was the usual custom of the defendant not to deliver goods to a stranger without his being identified or his satisfying the defendant by papers or otherwise that he was entitled to receive them; and further, that reasonable care and prudence required such precautions to be taken. That the person to whom the bags were delivered by the defendant was the person who wrote the letters signed S. H. Wilson & Co., or his authorized agent to receive said bags in case they should be sent pursuant to the order of September 10th. That there was no evidence from which it could be found whether his name was S. H. Wilson or not. That when the plaintiff sent the bags he supposed that S. H. Wilson & Co. was the name of a firm at Oswego, and when the defendant delivered them at Oswego they had no knowledge of the fraud, and supposed that the person to whom they were delivered was a member of or represented the firm of S. H. Wilson & Co. It is the duty of a carrier to carry the goods

to the place of delivery and deliver them to the consignee. When goods are safely conveyed to the place of destination and the consignee is dead, absent or refuses to receive, or is not known and cannot after reasonable diligence be found, the carrier may be discharged from further responsibility as carrier by placing them in a proper warehouse for and on account of the owner. (*Fisk* v. *Newton*, 1 Denio, 45.) The responsibility continues as carrier until discharged in the manner above stated. Hence, a delivery to a wrong person, although upon a forged order, will not exonerate the carrier from responsibility. (*Powell* v. *Myers*, 26 Wend., 591.) In examining the cases, the distinction between the liability of carriers and warehousemen must be kept in mind. The former is responsible as insurer. The latter for proper diligence and care only, in the preservation of the property and its delivery to the true owner. The former must, at their peril, deliver property to the true owner, for if delivery be made to the wrong person, either by an innocent mistake or through fraud of another, they will be responsible, and the wrongful delivery will constitute a conversion. (*McEntee* v. *The New Jersey Steamboat Co.*, 45 N. Y., 34.) It is of the liability of a warehouseman after the responsibility as carrier had terminated that the chief judge is speaking in the opinion in *Burnell* v. *The N. Y. Central R. R. Co.* (45 N. Y., 184), where he holds that the defendant was responsible only for due care and diligence. In the present case, the goods were consigned to S. H. Wilson & Co., Oswego. This plainly indicated some person, or rather persons, known by and doing business under that name. But as there was no such firm, and so far as the findings or case show never had been, delivery could not be made to the consignees. Then, as already seen, it became the duty of the carrier to warehouse the goods for the owner. Instead of this, the defendant delivered them to a stranger without making any inquiry as to who or what he was, simply upon his inquiring if such goods for Wilson & Co. had arrived, and upon being informed that they had, saying that he wanted them. If the case had been determined by the

referee upon the question whether due care had been used by the defendant, it would have been necessary to determine whether the goods were at the time held as carrier or as bailee of another character, as in the latter case only will the exercise of proper care exonerate from liability for the loss of the property. But as the legal conclusion of the referee shows that the judgment was not based upon any finding upon that question, but upon the legal conclusion of the referee, that the defendant was discharged from liability by having delivered the goods to the person who wrote the letters and orders, or his authorized agent, it is unnecessary to determine whether the defendant at the time held the goods as carrier or warehouseman, because if the legal conclusion is correct, a delivery to this person or his agent would have discharged the defendant in either case, entirely irrespective of the degree of care exercised in making delivery. The entire findings of the referee show that he would have held the defendant liable had the delivery under a like state of facts been made to any other than this person. The opinion of the learned judge, given at the General Term, shows that the judgment was affirmed by that court upon the same ground, and that the case would have been differently decided had the delivery been made to some other person. Indeed, this is the only reason that can with any plausibility be given for the judgment. As a finding, that proper care had been exercised by a bailee of goods whose duty it was to keep them for the owner, when he had delivered them to an entire stranger who claimed to be the owner, and gave no evidence of his right except to make inquiry if they had arrived for the consignee, and saying that he wanted them, would be wholly unsupported by the evidence. The question is whether the person who wrote the order acquired a right, so far as the defendant was concerned, to a delivery of the goods; in other words, whether as to it he was the consignee. If he was, the conclusion of the referee was correct. In that case, delivery to him discharged the carrier upon the principle that any delivery, valid as to the consignee, is a defence for the carrier as to all persons. It

would hardly be claimed, in case there had been a firm doing business at Oswego under the name of S. H. Wilson & Co., a swindler would make himself consignee of goods or acquire any right whatever thereto, which were in fact consigned to such firm, simply by showing that he had forged an order in the name of the firm directing such consignment. If he would not thereby acquire any right to the goods, delivery to him would not protect the carrier any more than if made to any other person. In *The American Express Co.* v. *Fletcher* (25 Indiana, 492), the facts were that a person claiming to be J. O'Riley presented himself to a telegraph operator, who was also agent of the express company, and presented a dispatch to be forwarded to the plaintiff, signed J. O'Riley, requesting him to send $1,900, which the operator sent through. That in due time the operator, in his capacity of agent for the express company, received a package purporting to contain valuables, addressed to J. O'Riley, whereupon the same person who had sent the dispatch presented himself and demanded the package, which was delivered to him. It turned out that this person was not J. O'Riley, but a swindler. *Held,* that the express company was liable to the plaintiff for the money. The case is silent as to whether J. O'Riley was a fictitious name, but I infer that it was not, as the plaintiff would not be likely to forward that amount of money to a person unknown to him. It will be seen that this was a much stronger case for the company than is that of the present defendant, so far as care was concerned, for the delivery was made to the person known by the company to be the one who sent the dispatch, while the defendant knew nothing whatever about the letters or order or how the goods came to be forwarded, consigned as they were. But the case directly decides that no right to the package was acquired by the swindler by sending a dispatch therefor in the name of another. If no right is acquired by sending a dispatch in the name of a real person, it is a little difficult to see how any is acquired by writing in the name of a firm having no existence, especially when the facts show, as in the present case,

the consignor supposed he was dealing with a substantial business firm, and the consignment showed that it was intended to be made to such a firm.

In *Ward* v. *The Vermont & Mass. R. R.* one Collins represented to the plaintiff that there was a person of the name of J. F. Roberts residing at Roxbury, Mass., and fraudulently induced the plaintiff to consign goods to him. In fact, no such person resided there. Upon the arrival of the goods, Collins went to a truckman and personated Roberts, and as such sent the truckman for the goods, to whom they were delivered by the company. *Held,* that the company was liable to the plaintiff therefor. That, in principle, is like the present case. In this the swindler had in substance represented to the plaintiff that there was a business firm at Oswego wishing to purchase bags, and had fraudulently procured a consignment of bags from the plaintiff to this firm, when in fact there was no such firm. This gave the defendant no right to deliver the goods to any one else. The argument for the defendant is that the plaintiff consigned the goods to S. H. Wilson & Co., and there being no such firm, the person signing the name of the firm to the letter and order was in respect to the goods to be regarded as the firm for the purpose of delivery by the defendant. This is in direct conflict with the intention of the plaintiff, apparent from the consignment. That authorized a delivery to S. H. Wilson & Co., and to no other. There was not a particle of proof that the person who wrote the letter was ever known to any one by that name The consignment did not therefore authorize a delivery to him. The defendant had no knowledge whatever of the letters, and his writing them furnished no evidence to it of his doing business in that name.

*Duff* v. *Budd* (7 Eng. Com. Law, 399) was a case much like the present. The evidence that the person who received the goods was the same stranger who ordered them in a fictitious name, was equally strong as in the present case, yet there is no intimation that by this fraud he acquired any right to the goods or the defend-

ant any authority to deliver them to him, and the plaintiff was held entitled to recover of the carrier therefor. (See also *Birkett* v. *Willan*, 4 Eng. Com. Law, 540.) *Heugh* v. *The London Railway Co.* (5 Law Exch. Reports, 51), and *McKean* v. *Ivor* (6 id., 36), are relied upon by the defendant. In the former, one Nurse, who had been in the employ of a rubber company which had ceased to do business, wrote and sent to the plaintiff an order for goods in the name of the company. The plaintiff forwarded the goods by the defendant, a common carrier, consigned to the company. The defendant tendered the goods at the place where the company had carried on business. The persons in possession refusing to receive, they were taken away by the defendant, who, according to the course of business, wrote a letter addressed to the company, advising of the receipt of the goods and requesting their removal. Nurse thereafter came and presented this letter, with an order for the delivery of the goods, signed in the name of the company by him to the defendant, who thereupon delivered the goods to him. *Held*, that the liability of the defendant as carrier was terminated by the tender, and that whether the defendrnt had been negligent in the delivery was a question of fact for the jury. The latter was a case where goods had been sent to a fictitious firm upon a fraudulent order, by the plaintiff, consigned to the firm at 71 George street, Glasgow, that being the address specified in the order by the defendant, a carrier, who upon the arrival of the goods followed the usage universal among carriers at Glasgow, which was to send notice of the arrival of the goods, with a request for their removal. This notice was received by the one giving the order, who indorsed the name of the firm thereon and presented it to and obtained the goods from the defendant. *Held*, that the defendant having delivered the goods according to the universal usage of carriers, had complied with the directions of the consignor, which must be taken as including such usage, and was therefore not liable.

In *Stephenson* v. *Hart* (4 Bing., 476) it was expressly held that the carrier had no right to make delivery to the

writer of the fictitious order. But it is said that the plaintiff intended the goods should be delivered to the writer of the order. Not at all. He did not consign them to the writer of any order, but to Wilson & Co. This is the only evidence of his intention as to the persons to whom delivery should be made. It is further said that it was the plaintiff's negligence in forwarding the goods without ascertaining that there was in fact such a firm. I am unable to see what the defendant had to do with this. Its duty was to deliver to the firm, and if that could not be found, to warehouse and keep for the owner. The same might be said in every case where goods were forwarded to a consignee supposed to be at a particular place, but who in fact was not there. The usage of the defendant cannot avail him in this case. The referee has found just what was done. This accords with the evidence, in which there was no conflict.

The judgment appealed from must be reversed, and a new trial ordered, costs to abide event.

All concur, except CHURCH, Ch. J., dissenting, and ALLEN, J., not voting.

Judgment reversed.