Sword *v.* Young.

SWORD *v.* YOUNG.

(*Knoxville.* September 18, 1890.)

1. COMMON CARRIER. *Liable to consignor for value of goods negligently delivered to fraudulent purchaser.*

Common carrier is liable to consignor for value of goods shipped upon a fraudulent order to a fictitious consignee, and delivered by the carrier to the person who had made the fraudulent order and obtained the bill of lading without inquiry or knowledge as to his identity.

Cases cited: 1 Lawyer's Reports, Annotated, 650; 50 N. Y., 213 (10 Am. Rep., 475); 4 Bing., 476.

2. SAME. *Same. Carrier's liability secondary.*

But the carrier's liability is postponed to that of the fraudulent purchaser and his confederates, where they are jointly sued.

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County. H. R. GIBSON, Ch.

COOPER & DAVIS for Sword.

WILLIAMS & HENDERSON for Young.

J. W. CALDWELL for Garland.

W. M. BAXTER and HENDERSON & JOUROLMON for Railroad Company.

TURNEY, Ch. J. On May 18, 1889, J. F. Gillenwaters, over the assumed and fictitious name of "Charles G. Magrauder," wrote to Sword & Son, of Cleveland, Ohio, to send to them (representing Magrauder as a firm name) a brick machine. The machine was shipped, and came to Knoxville on the cars of defendant, East Tennessee, Virginia, and Georgia Railroad. Shortly after its arrival Gillenwaters presented the bill of lading made in the name of "Charles G. Magrauder," demanded the machine, which was delivered to him, paid the freight, and receipted in the name of Charles G. Magrauder. No questions were asked, and he was not required to identify himself as the consignee, nor was the bill indorsed.

Defendant Garland claims to have purchased the machine from his brother-in-law, Gillenwaters. He afterward sold it to Young & Tindall. Complainants were, of course, never paid the price for the machine, and now sue the defendants, Gillenwaters and Garland, Young & Tindall, and the railroad company.

There can be no question of the liability of Gillenwaters and Garland. Was the conduct of the carrier such as to amount to a conversion and make it liable? It is a well-settled general rule that the carrier must deliver to the consignee at the place appointed.

Chancellor Kent declares the law to be that "a common carrier is in the nature of an insurer, and is answerable for accidents and thefts, and

even for a loss by robbery. He is answerable for all losses which do not fall within the excepted cases of the act of God and public enemies. This has been the settled law of England for ages, and the rule is intended as a guard against fraud and collusion, and is founded on the same broad principles of public policy and convenience which govern in the case of inn-keepers. This principle of extraordinary responsibility was taken from the edict of the praetor in the Roman law, and it has insinuated itself into the jurisprudence of all the civilized nations of Europe." 2 Kent, 805, 9th Ed.

This is equally the rule in this country. It can make no difference that the defendant carrier thought, because Gillenwaters had the bill of lading, that he was Charles G. Magrauder. If he was a stranger, as the proof shows him to be, it was the duty of the carrier to have required him to identify himself as the consignee or his rightfully-constituted agent. By its failure, Gillenwaters was enabled to practice that fraud intended to be guarded against by the rule from Kent, as well as a theft, or its equivalent—the obtaining of the goods by false pretenses.

That Gillenwaters had succeeded in deceiving the complainants by representing himself as Magrauder, is no excuse to the defendant for its failure to use an effort to discover his true character.

The consignment was to Charles G. Magrauder. That name was fixed on the machine, and it was

Sword *v.* Young.

a duty to deliver to him only, or, if he could not be discovered, to notify the consignor.

There is no difference between this case and one in which a consignment has been made to an actual person, and the goods delivered by accident, mistake, or carelessness to a cheat who represents himself as the real consignee. It is necessary in both to have proof of identity or authority to receive.

We have no doubt of a confederacy between Gillenwaters and Garland. The decree will be against them, in the first instance, for the value of the machine; then against the carrier. A majority of the Court holds that no decree can be had against Young & Tindall.

Modify the Chancellor's decree accordingly.

---

OPINION ON PETITION TO REHEAR.

(October 4, 1890.)

TURNEY, Ch. J. This case was decided at a former day of the term, and is again before us on a very earnest and respectful petition to rehear.

The facts are set forth in the former opinion.

The authorities cited do not, in our opinion, when taken connectedly, support the petition. We had examined the case of *Weyand & Atchison* v. *Railway Co.*, as reported in Lawyer's Reports, An-

9—5 P

notated, Vol. I., 650. It is to that case Mr. Free-
man has added his notes in 9 American Rep.

In that case the Court said : " This case does not
fall within the rule, that where one of two inno-
cent parties must suffer, the loss must fall upon
him who put it in the power of another to per-
petrate the wrong," and adds : "The possession of
the bill of lading without indorsement or other
evidence of assignment, did not vest Evans with
any apparent right to the property. The loss re-
sulted from the negligence of the defendant in not
insisting upon proper evidence of an assignment
before it surrendered the goods."

In *Price* v. *Oswego and Syracuse Railroad Co.*,
50 N. Y., 213, and 10 Am. R., 475, it was held
" where goods which have been fraudulently or-
dered by an individual in the name of a fictitious
firm, and have been shipped in compliance with
the order, directed to such firm, are delivered by
the carrier to a stranger without requiring evi-
dence of his identity, the carrier is liable to the
consignee for their value," the Court saying : " In
the present case the goods were consigned to S.
H. Wilson & Co., Oswego."

This plainly indicated some person, or rather
persons, known by and doing business under that
name. But as there was no such firm, and, so
far as the findings or case show, never had been,
delivery could not be made to the consignees.
Then, as already seen, it became the duty of the
carrier to warehouse the goods for the owner.

Instead of this, the defendant delivered them to a stranger without making any inquiry as to who or what he was."

The Court cites *Stephenson* v. *Hart*, 4 Bing., 476, in which "it was expressly held that the carrier had no right to make delivery to the writer of the fictitious order," and adds: "But it is said that the plaintiff intended the goods should be delivered to the writer of the order. Not at all. He did not consign them to the writer of any order, but to Wilson & Co. This is the only evidence of his intention as to the person to whom the delivery should be made. It is further said that it was the plaintiff's negligence in forwarding the goods without ascertaining that there was in fact such a firm. I am unable to see what the defendant had to do with this. Its duty was to deliver to the firm, and, if that could not be found, to warehouse and keep for the owner."

That case is at one with the present. It is sound in principle, and in consonance with right.

The petition is dismissed.