SECURITY TRUST CO. OF ROCHESTER v. WELLS, FARGO & CO.
                            EXPRESS.

(Supreme Court, Appellate Division, Fourth Department.   March 10, 1903.)

1. CARRIER—WRONGFUL DELIVERY—NEGLIGENCE OF CONSIGNOR.
       An express company is not relieved from liability for delivering a pack-
    age of money to a person other than the consignee by the fact that the
    consignor might have discovered by the exercise of due care that the
    order and check for the money were forgeries.

2. SAME—CONVERSION.
       An express company delivering goods to a person other than the con-
    signee is liable for conversion.

3. SAME—WAREHOUSEMAN—INVOLUNTARY BAILEE.
       An' express company is liable for a wrongful delivery, though its
    liability is merely that of a warehouseman or an involuntary bailee.

4. SAME—LIMITATION OF LIABILITY.
       A shipping receipt limiting the liability of an express company for loss
    as forwarders only, and within its own lines of communication, and not
    for any default of connecting companies, does not relieve it of liability
    for a wrongful delivery.

5. SAME—PRESENTATION OF CLAIM.
       A shipping receipt limiting the liability of an express company to
    claims presented within 90 days, does not relieve it of liability for a
    wrongful delivery, though the claim was not presented for more than 2
    years, it having been presented as soon as the consignor discovered the
    fraud.

Appeal from Trial Term, Monroe county.

Action for conversion by the Security Trust Company of Roches-
ter against the Wells, Fargo & Co. Express. From a judgment for
plaintiff and an order denying a new trial, defendant appeals. Af-
firmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-
LIAMS, and HISCOCK, JJ.

James M. E. O'Grady, for appellant.
Edward Harris, for respondent.

SPRING, J. On July 6, 1899, one Rachel G. Rice deposited with
the plaintiff, a trust company, $1,000, and left her genuine signature

¶ 2. See Carriers, vol. 9, Cent. Dig. §§ 306, 356, 357.

with one of its officers or agents.   On July 10, 1899, a check pur-
porting to be drawn on this fund by her to the order of John Rice was
paid by the plaintiff, and a similar one for a like sum the 15th of that
month, both of which it was subsequently discovered were forgeries.
On July 20, 1899, the plaintiff received a letter dated that day at Gen-
eseo, N. Y., apparently signed by her, which directed the respondent
to send to her at Geneseo $500 in currency, and a check was inclosed
also purporting to be signed by her, to the order of Mrs. Rachel G.
Rice, and bearing the indorsement of Rachel G. Rice.   The check
was stamped "Paid" by the respondent, and the currency sent by
the medium of the appellant express company, addressed to Rachel
G. Rice, Geneseo, N. Y.   The representative of the express company
made inquiries for the consignee upon the receipt of the package,
but was unable to learn that any one of her name lived or was in
that vicinity, and placed the package in the company's safe.   Shortly
after, a man called at the office, stating he was Frank Rice, and
produced an order for the money, ostensibly signed by the consignee,
and the package was delivered over to him by the employé of the
appellant.   The letter and the check to the respondent, and also
the order exhibited to the appellant, were fictitious, and the package
of money was not delivered to the consignee to whom it was address-
ed.   The frauds were not discovered until October, 1901, when Miss
Rice gave a check on the bank, which would have overdrawn the
account if its previous depletion had been made at her instance.   The
plaintiff was sued by her, of which the appellant had notice, and
has made good to her the $500 lost as above described, and this action
of conversion was commenced to recover of the appellant on the
theory it had not delivered the package to the person addressed, but
had delivered to another person, without any authority from the
consignee.

It is contended by the learned counsel for the appellant that the
agents of the respondent were negligent in failing to discover the
forgeries of the check and the letter, and, had they exercised care,
the package of money would not have been sent.   Assuming—but not
conceding, for there is no proof on the subject—that vigilance by
the employés of the respondent might have resulted in the detection
of the forgeries, that omission does not exonerate the appellant.
That the plaintiff paid the checks without discovering they were sim-
ulated is not the concern of the defendant.   Its agent was not aware
of the payment of these checks, and the action of the plaintiff, wheth-
er careless or otherwise, did not influence the defendant in delivering
the money to the wrong person.   As a common carrier, it received
the package consigned to Rachel G. Rice at Geneseo.   Confessedly,
it was not delivered to her, but to a man who assumed to represent
her, and who was not in any way identified.   The agent of the re-
spondent did not know the man to whom the delivery was made, but
he did know the man was not Rachel G. Rice, the consignee.   The
agent took the chances, when he handed the package of money to
this man, that he was the alter ego of the person to whom the pack-
age was addressed.   The strict rules governing the liability of a com
mon carrier for the misdelivery of goods transported by it are not

even necessary to be resorted to in this case, for any one who, for
a compensation, undertakes to deliver an article to a certain person,
and then hands it over to one that the deliverer well knows is not
the person to whom he agreed to make delivery, is liable. He may
not be excused because, forsooth, he believed the one to whom deliv-
ery was made represented the person who was to receive the article.
The liability of the common carrier, nevertheless, is the measure to
be meted out to the appellant. It received the goods strictly within
that capacity, and cannot be exonerated until the goods have been de-
livered to the consignee. "No liability of the carrier is more rigor-
ously enforced than that which requires delivery to the proper per-
son." Furman v. Union Pacific R. R. Co., 106 N. Y. 579, 584, 13
N. E. 587. In McEntee v. New Jersey Steamboat Company, 45 N.
Y. 34, 6 Am. Rep. 28, the court say at page 37, 45 N. Y., 6 Am.
Rep. 28:

"Common carriers deliver property at their peril, and must take care that
it is delivered to the right person; for, if the delivery be to the wrong person,
either by an innocent mistake or through fraud of third persons, as upon a
forged order, they will be responsible, and the wrongful delivery will be
treated as a conversion."

In Price v. Oswego Syracuse R. R. Co., 50 N. Y. 213, 10 Am. Rep.
475, the plaintiff, a merchant in Syracuse, received an order purport-
ing to be signed by S. H. Wilson & Co., of Oswego, for a quantity
of bags to be transported by rail to that city. The bags were con-
signed to S. H. Wilson & Co., Oswego, and were received for ship-
ment by the defendant, a common carrier. The bags were delivered
by the defendant at Oswego to a man who called for them and paid
the freight charges and signed the name of the consignee to a re-
ceipt therefor. There was no such firm in Oswego, and the plaintiff
did not know any such firm, but shipped the bags on the strength of
the order and a letter to one Morgan. The plaintiff sued for the
value of the bags, but was defeated by the referee who heard the case.
The Court of Appeals reversed the judgment of affirmance by the
General Term on the ground that the defendant was responsible for
the wrongful delivery of the goods; that it was not discharged until
the goods were delivered to the consignee; and that "a delivery to
a wrong person, although upon a forged order, will not exonerate
the carrier from responsibility." To the same effect is Pacific Ex-
press Company v. Shearer (Ill.) 43 N. E. 816, 37 L. R. A. 177, 52 Am.
St. Rep. 324, where there is an exhaustive analysis of the authorities
in a note by the reporter. Hutchinson on Carriers, sections 344–349;
Lawson on Bailments, section 200. The wrongful delivery rendered
the appellant liable for conversion. Guillaume et al. v. The Ham-
burgh & American Packing Company, 42 N. Y. 212, 1 Am. Rep. 512;
Hawkins v. Hoffman, 6 Hill, 586, 41 Am. Dec. 767.

In Wait's Law and Practice, vol. 1, page 412 (7th Ed.), is the fol-
lowing concise statement of the rule:

"If a common carrier delivers goods to the wrong person, although by his
own innocent mistake, or by his being imposed upon, he is liable to the true
owner for the value. The carrier delivers at his peril. He is responsible as
an insurer; and a wrongful delivery by him is treated at common law as a
conversion of the property."

Nor would it benefit the defendant if the liability were that of a warehouseman or of an involuntary bailee, for the wrongdoing consisted in the affirmative act of delivering the goods to a person not the consignee.  Bank of Oswego v. Doyle et al., 91 N. Y. 32, 43 Am. Rep. 634.

It is claimed the appellant is relieved from liability by reason of stipulations contained in the shipping receipt delivered to the respondent upon the acceptance of the package for shipment.  The receipt contains clauses limiting its liability for loss as forwarders only, and within its own lines of communication, and not for any default of connecting companies.  There is nothing, however, whereby it absolved itself from the common-law liability as a carrier for a wrongful delivery.  The receipt then has this clause:

"And it is further stipulated that Wells, Fargo & Company shall not be liable under this contract for any claim whatsoever, unless presented in writing within 90 days from date thereof."

The claim in this case was not presented until more than two years after the delivery of the package, but it was made promptly upon information of the fraud received by the respondent.  This clause follows the clauses defining what constitutes the limitation upon its liability, and, as has been stated, not one refers to any restriction of that liability for a delivery to a person other than the consignee. Within the strict construction which is to be applied to stipulations designed to give immunity to a common carrier for the accountability which the law imposes upon it (Nicholas v. N. Y. C. & H. R. R. R. Co., 89 N. Y. 370; Rathbone v. N. Y. C. & H. R. R. R. Co., 140 N. Y. 48, 35 N. E. 418; Wheeler v. O. S. N. Co., 125 N. Y. 155, 26 N. E. 248, 21 Am. St. Rep. 729; Westcott et al. v. Fargo, 61 N. Y. 542, 19 Am. Rep. 300), the general words will not be construed to relieve the appellant, but the claim will be confined to the limitations mentioned in the contract.  In the cases cited the general language employed was held not to exempt the carrier for responsibility for its negligent acts.  The tortious act which renders it amenable to an action for conversion brings the case within the principle adverted to.  See Porter v. Southern Exp. Co. (S. C.) 16 Am. Rep. 762, where a similar exempting clause was held not to bar a recovery for a nondelivery of goods, although the limiting period had elapsed before the action had commenced.  The judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs.

ADAMS, P. J., and McLENNAN and WILLIAMS, JJ., concur. HISCOCK, J., not voting.