UNITED STATES TIRE CO.,
For account of &c

VS

**7365**

NO. 7365.

WELLS, FARGO EXPRESS CO.

CHARLES F. CLAIBORNE, JUDGE.

June 28th. 1918.

CHARLES F. CLAIBORNE, JUDGE.

Plaintiff seeks to recover damages from the defendant for delivering goods to a person other than the consignee.

Plaintiff alleges that *a clerk* in the employ of the Electric Appliance Company, assuming to act in the name of said Company, but without authority so to do, and without intent to defraud it, gave an order to petitioner to ship by express to one James Murray at Donaldsonville a certain number of automobile tires and tubes valued at $557.60, and to charge the same to said Electric Appliance Company; that the plaintiff delivered said tires to the defendant the Wells Fargo Express consigned to James Murray, Donaldsonville; that there was in reality no such person as James Murray; that the employee of the Electric Company had conspired with another to defraud said company and to impersonate James Murray and to assume that name; that the Express Company received the tires and negligently delivered them to that other person who assumed the name of James Murray; that it was the duty of the Express Company to deliver the said tires to James Murray, the consignee, and that if it had exercised due care, it could easily have ascertained that the person to whom it actually delivered the tires was not James Murray, the consignee. Plaintiff therefore claims from defendant the value of the tires delivered to James Murray.

The defendant excepted to this petition on the ground that it disclosed no cause of action. The argument was that although the name of the person who received the tires was not James Murray, yet the tires were delivered to the person intended as the consignee and designated as James

224

Murray for the purposes of the consignment," in other words that the tires had reached the person by name to whom they were intended to be consigned, whatever was his real name.

The exception was maintained and the suit was dismissed.

Reduced to its simplist expression the cause of action intended to be setforth by the plaintiff is, that the carrier delivered the goods to the wrong person without exercising due care and diligence to ascertain the identity of the consignee.

The duty of carriers upon this subject is thus epitomized:

"There is said to be absolutely no excuse for the carrier's delivery to the wrong person, and he is under the duty of being absolutely certain as to the person. No circumstance of fraud, imposition, or mistake will excuse him. If he has any doubt as to a person who applies for the goods, he should require positive proof of his identity x x x. Delivery to the wrong person is a conversion even though made by innocent mistake or through fraud practiced on the carrier x x. A delivery to one who orders in a fictitious name or assumes the name of another is a misdelivery", 4 Elliott on Contracts § 3261.

In 10 C. J. § 377; 378 the rule is thus stated:

"In cases of delivery to wrong person "no question of care arises, for in such case the carrier acts at its peril and is liable regardless of negligence." "on the question of the carrier's liability for a delivery to the wrong person, it is immaterial that the delivery was secured by such person through mistake or fraud, even though the carrier acting in good faith, was imposed on by such person. The question is not one of due care, for the carrier, like any other bailee, acts at his peril in making delivery. The law exacts of the carrier absolute certainty that the person to whom delivery is made is rightfully entitled to the goods and places on it the entire risk of mistake x x x § 379. The

rule applies with full force and effect, although the con-signee to whom the goods are billed is a fictitious person or firm in whose name the goods have been fraudulently order-ed." 58 N. E. 560; 133 Mass. 156.

And in I Michie on Carriers Sec. 858 p 551: "Where a carrier delivers goods to the wrong person, it is liable for conversion. x x Neither fraud, imposition, nor mistake, will excuse the carrier for delivering goods to the wrong person. The carrier is liable without regard to the question of due care or negligence".

Angell on Carriers § 324. Wood's Brown on Carriers p 319. Hutchinson on Carriers 344. 6 Cyc p 472. 123 U. S. 727 37 L. R. A. 177. Story on Bail Sec. 540.

Thus in Sword vs Young 14 S. W. 481 (Tennessee) Gillenwaters over the assumed and fictitious name of Charles G. Magrander wrote to Sword & Son of Cleveland to send (repre-senting Magrander as a firm name) a brick machine. The machine was shipped and came to Knoxville on the cars of defendant railroad. Gillenwaters presented a bill of lading in the name of "Charles G. Magrander" and received the machine for which he receipted in the same name. The Court held the carrier liable for misdelivery. "It made no difference" said the Court, "that because Gillenwaters had the bill of lading that he was Magrander. It was the duty of the carrier to have required him to identify himself as the consignee. By its failure to do so, Gillenwaters was enabled to practice a fraud. There is no difference between this case and one in which a con-signment has been made to an actual person and the goods delivered by accident, mistake or carelessness to a cheat who represents himself as the real consignee. It is necessary in both to have proof of identity".

On application for rehearing the court cites with approval Price vs Rrd. 50 N.Y. 213; and refuses a rehearing.

In Price vs RRd. 50 N. Y. 213; 10 Ann Rep 475, the facts were as follows:

226

The plaintiff at Syracuse received a letter signed "S. H. Wilson & Co.," Oswego, directing the shipment to them of a lot of bags. The plaintiff shipped the bags by the defendant railroad. The defendant delivered them at Oswego to a man representing himself as the agent of S. H. Wilson & Co., The fact was that there was no such person or firm in Oswego, and the letter signed "S. H. Wilson & Co.", was only a part of a scheme to defraud the plaintiff. The defense was, as in this case, that the person to whom the bags were delivered was the person who wrote the letter and was the consignee. The judgment was against the carrier. The Court said: "But as there was no such firm x x delivery could not be made to the consignees", reversing 58 Barbour 599, and quoting Ward vs Vermont RRd. Duff vs Budd 7 Eng. Corn Law 399; 4 id 540; 4 Bing 476 Stepherson vs Hart.

The case of Winslow vs The Vermont RRd. 42 Vt. 700.—I Am Rep 365-is very similar to the one under consideration. It is thus stated: "They (the goods) were directed to J. F. Roberts, Roxbury, Mass. There was no such person as J. F. Roberts, and no person who was known or passed by that name. Collins, whom the plaintiff well knew as Collins, had represented that there was such a person as J. F. Roberts, in Roxbury, and had induced the plaintiff to consign the goods to that address. Collins then went to Boston, and awaited the arrival of the goods, and claimed them under the name of J. F. Roberts, which name he assumed for the purpose of getting the goods. The windle was successful". It was claimed in that case, as in this one, "that there was no misdelivery; that the goods were delivered to the very party to whom they were sent, the only J. F. Roberts there was, and that the defendants have therefore fulfilled their contract". But the Court held that J. F. Roberts was the consignee, and that delivery to any other person was a misdelivery and that if there was no such person, "the goods were for the consignors", and held the defendant company liable, quoting Stepherson vs

227

Hart, 4 Bing 476 and others.

In American Express Co., vs Fletcher, 25 Ind. 492, the defendants pleaded that "a person pretending to be J. O. Riley dispatched through said operator to the plaintiffs a telegram requesting them to send him $1900.00 by express; that in due time the same agent received by express a package purporting to contain valuables, addressed to J. O. Riley, whereupon the same person who had dispatched the telegram demanded said package, and it was thereupon delivered to him". The Court said: "Without considering whether the facts pleaded in the second and third paragraphs of the answer would have been admissible in evidence under the general denial we are of opinion that those paragraphs were justly held bad on demurrer. x x The express undertaking of the appellant was to deliver the package to J. O. Riley in person. The utmost that the answer alleged was that the delivery was to another person who pretended to be Riley." See also 29 Ind, 27/

On the same lines are Southern Express vs Van Meter 17 Fla 783; 35 Am Rep 107, and Pacific Ex Co., vs Shearer. 43 N. E. 816; 160 Ill 215; 37 L. R. A. 177, American. Express vs Fletcher 25 Inc. 492 and differentiating Dunbar vs RRd 110 Mass, 26 and Edmunds vs Transportation Co. 135 Mass 283 and dissenting from Samuel vs Chenes 135 Mass 278.

The case of Oskamp vs Southern Express Co, 56 N. E. 13 (Ohio 1899) is as follows:

There resided in the town of Hopkinsville one T. M. Jones of the highest business rating. The plaintiff, of Cincinnati, received a written order purporting to be signed by T. M. Jones for the shipment of a lot of jewelry. The plaintiffs filled the order and shipped the jewelry in a package directed to T. M. Jones. The genuine T. M. Jones had not ordered the goods; but the order had been written by one Rothschild who had been in Hopkinsville only a few days. The Express Company delivered the jewelry to Rothschild upon his representation that he was T. M. Jones, but without any further identification by any one. The Express

228

Company was held liable.

In Samuel vs Chenez 135 Mass 278; 46 Am Rep 467 it is said, on p 470, that the above cases "differ widely in their facts from the case at bar and are distinguishable from it".

There are, however, a number of decisions not in accord with the principles laid down in the above cases. They exonerate the carrier when the fraud has been practiced primarily upon the consignor. They are compiled in 1 Michie § 859 p 553, and in 37 L. R. A. p 180 note, and in 10 C. J. p 226 note 79.

Michie thus states that view § 859:

"When the carrier delivers goods to the person to whom the goods were sent, although by false and fraudulent devices that person impersonates another, to whom the consignor believed he was sending the goods, the carrier is not liable".

But the conservative opinion seems to be that the carrier is liable when in delivering the goods it fails to exercise proper care to identify the party claiming them, and when the exercise of that care might have led to the discovery of the fraud or prevented its consummation. 43 Mo. App 659 (663); 42 S. W. 795; 1017; 10 C. J. § 379 p 266; 267 note 80; 37 L. R. A. 177 (184 last § of note.)

The petition in this case distinctly avers that the defendant had "carelessly and negligently delivered the said tires and tubes to some person other than James Murray, the consignee" and "that if defendant had exercised due care and diligence and had duly performed the duties so placed upon it, it could easily have ascertained that the person to whom it actually delivered the tires and tubes was not James Murray, the consignee". This is tantamount to alleging that the exercise of the care required by law of the defendant to identify the consignee would have led to the discovery of the fraud and that the failure to exercise that care rendered the defendant liable for the loss that resulted from it. The

question of liability is therefore one of fact as well as of law.

For the reasons above stated we think that the petition herein did state a cause of action.

It is therefore ordered that the judgment herein maintaining the exception of no cause of action be reversed and set aside, and it is now ordered that said exception be overruled and that this case be remanded for further trial according to law.

June 28th. 1918.