**116** Fox River Butter Co. *v.* Lightning Motor Line, Inc.

Appellate Term, First Department, May, 1925.          [Vol. 125

---

Fox River Butter Company, Appellant, Respondent, *v.* Lightning Motor Line, Inc., Appellant, Respondent.

Supreme Court, Appellate Term, First Department, May 28, 1925.

Carriers — delivery of goods — action by shipper for conversion of two shipments of butter delivered by carrier to fictitious consignee — carrier delivered merchandise to consignee designated by shipper — carrier not insurer against frauds practiced by consignee upon shipper — complaint dismissed.

A carrier of goods, while responsible for delivery of merchandise to the proper person, is not an insurer against frauds practiced by a consignee upon the shipper.

Accordingly, plaintiff's complaint, seeking to recover in two causes of action for the conversion of two shipments of butter delivered by it to the defendant, a long distance motor trucking carrier, and in turn delivered by said carrier to

a consignee, subsequently found to be a swindler, who presented a signed letterhead bearing the identical name and address given by the shipper with respect to delivery of the shipment, should be dismissed, since the carrier fulfilled its duty by delivering the merchandise in accordance with the expressed direction of the shipper. The fact that delivery was made at the carrier's terminal and that the consignee did business under an assumed name, is immaterial.

Moreover, responsibility for the imposture practiced upon the shipper by the fictitious consignee, who made it believe that he was a person listed in the commercial rating book, cannot be fastened upon the carrier in the absence of evidence that it knew that the shipper intended to consign the goods to a person designated in the rating book as fairly well rated.

CROSS-APPEALS from a judgment of the Municipal Court of the City of New York, Borough of Manhattan, First District, dismissing the complaint on the merits as to the first cause of action and permitting the plaintiff to prevail as to the second cause of action.

*Frank P. Woglom,* for the appellant, respondent.

*Miller, Bretzfelder & Ruskay* [*Bertram Boardman* of counsel], for the appellant, respondent.

LEVY, J.:

These are cross-appeals from a judgment dismissing complaint on the merits as to one cause of action and permitting the plaintiff to prevail as to the other. On December 12, 1922, the plaintiff, a butter dealer in New York, directed the defendant, engaged in the business of long-distance motor trucking, to ship to William Evans of 4922 Fairmount avenue, Philadelphia, six tubs of butter. The next day a certain person calling himself William Evans telephoned to the defendant in Philadelphia at its terminal inquiring whether the shipment had arrived and stating that he would personally call for the goods, as he was " just opening up the business and had not got opened up yet." He then called for the goods at the defendant's terminal and presented the following paper signed by him, the letterhead being printed:

" WILLIAM EVANS
" Dealer in
" BUTTER EGGS POULTRY CHEESE
" 4922 Fairmount Avenue
" PHILADELPHIA, *Dec.* 13, 1922.

" LIGHTNING MOTOR LINE:
" DEAR SIRS.— Please give bearer 6 tubs butter for me and
" Oblige,
" WM. EVANS."

The bearer of the letter paid the expressage, signed a receipt in the name of William Evans, and departed with the butter. The

**118** Fox River Butter Co. *v.* Lightning Motor Line, Inc.

Appellate Term, First Department, May, 1925.          [Vol. 125

next day the defendant received another order to ship sixteen tubs of butter to William Evans, 4922 Fairmount avenue, Philadelphia, and again the defendant received a telephone call from a man giving his name as William Evans, asking whether the goods had arrived. On receiving word that they had, this man, who was the same person that had called the day before, went to defendant's terminal, and without further identification received the butter. It turned out that the alleged William Evans was a swindler, who obtained the property for the purpose of turning it into cash and absconding with the proceeds. He was arrested upon the initiative of the plaintiff, on his attempt to get a third shipment at defendant's terminal, and after conviction upon his plea, was sentenced for the crime of obtaining merchandise under false pretenses. The plaintiff thereafter sued the defendant for conversion upon two causes of action, one for the value of the six tubs of butter delivered on the thirteenth day of December and the other for the value of sixteen tubs delivered a day later, and alleged in its complaint that defendant had " failed and neglected to deliver to the said William Evans, the said consignee, the said   *   *   *   tubs of butter, or any part thereof."

The facts so far stated are set forth as they were known to both parties *prior* to the litigation. *The following additional facts were brought out at the trial:* On December 12, 1922, or one day prior to the delivery of the shipment, a certain person styling himself William Evans, 4922 Fairmount avenue, Philadelphia, called up the plaintiff on the telephone and ordered six tubs of butter. The latter did not know William Evans of Philadelphia, but caused the name to be looked up in Dun's and Bradstreet's Credit Agency reports, where it was given without any address, but with a satisfactory rating. Thereupon it ordered the goods shipped. It appeared from the testimony of the impostor offered on behalf of the defendant, that on December 11, 1922, he rented a small store at 4922 Fairmount avenue, Philadelphia, the address given on the bill of lading, for twelve dollars a month, by a written lease which was introduced in evidence; that he used the name of Walter Evans in the lease, although his real name was Walter Bowen; that he placed on the door of the store at Fairmount avenue a card bearing the name of " William Evans; " and that after receiving the merchandise he sold it to the A-Co. Butter Co., which was no longer in business. Upon the foregoing facts the trial court dismissed the complaint as to the first cause and granted judgment in favor of the plaintiff on the second cause of action.

If the dismissal of the first cause of action was right, the question occurs whether or not the one circumstance lacking in the defense

of the second cause was sufficient to give rise to a different result. In the former, the defendant proved that the consignee identified himself by presenting a signed order on the letterhead of " William Evans, 4922 Fairmount Avenue, Philadelphia," signed " William Evans " by the person who had ordered the goods by telephone, authorizing delivery to bearer. In the latter, the same person who had received the goods on the thirteenth of December, upon identification by means of the delivery order, received the goods on the fourteenth without any further identification. This circumstance is not sufficient to bring about a different result. As he had adequately identified himself the day before, it was not necessary for him to do so a second time. Accordingly, if the determination in the former cause was right, the judgment in the latter was error. The correctness of the decision of the court below must, therefore, be measured by considering the propriety of the result arrived by it in the first cause of action. Tested by the allegations in the complaint, it seems clear that the plaintiff has not shown that the defendant failed to deliver the merchandise to the intended consignee, William Evans, of 4922 Fairmount avenue. As a matter of fact, the defendant *did* deliver it to the very person designated by the plaintiff. On a former appeal we reversed a judgment dismissing the complaint because the defendant had not explained its failure to attempt delivery at the address given instead of at its terminal, so as to enable the court to determine whether the omission to do so was an act of negligence. This explanation having been given at the new trial, the judgment of the court below, in favor of the defendant on the first cause of action, was a determination that it was not negligent in delivering to the intended consignee at a place other than at the given address, upon proper identification.

The plaintiff, it is true, contends that if the defendant had made delivery at the address indicated, it would have found an empty store, and the fraud would have been discovered. But if the carrier had made delivery at such place to the man to whom it had given the goods at its terminal, it would have discharged its contractual duty, regardless of the fact that the store was empty. It is under no obligation to give notice to the consignor regarding the desirability of the consignee as a credit risk. Delivery by the carrier to a consignee indicated by a shipper, at an empty store, is no more negligent than delivery to such a consignee at a place upon which the sheriff is actually making a levy. In neither case would it seem to be the duty of the carrier to withhold delivery to the intended consignee or to notify the shipper to be on his guard. But in any event, the lease and the card upon the store door indicating ostensible possession are but additional circumstances.

We must, therefore, hold that the defendant, having fulfilled its duty by delivering in accordance with the expressed intention of the shipper, is entitled to judgment dismissing the complaint on both causes of action.

As, however, the plaintiff has argued at length that the case of *Price* v. *Oswego & Syracuse R. R. Co.* (50 N. Y. 213) sustains its contention, and as the case under consideration is of a type which is of great importance and interest to the business community, a more extended discussion of the principles involved will not be out of place. In the *Price* case a certain person wrote a letter to the plaintiff in Syracuse in the name of " S. H. Wilson & Co." of Oswego, without giving any street address, ordering three bales of bags to be shipped by rail. The plaintiff sent these bags by freight to S. H. Wilson & Co., Oswego. A few days later a man, whom the court found to be identical with the person who had written and signed the letter, arrived at the freight terminal of the defendant, said that he was a representative of S. H. Wilson & Co., paid the freight, and received the merchandise upon signing a receipt in the name of S. H. Wilson & Co. It developed that there was no such firm as S. H. Wilson & Co. in Oswego or anywhere else, so far as known, and that the man who had taken delivery of the goods was an impostor. The court held the carrier liable for conversion on the theory of negligence. In its opinion it said (p. 217): " In the present case the goods were consigned to S. H. Wilson & Co., Oswego. This plainly indicated some person, or rather persons, known by and doing business under that name. But as there was no such firm, and so far as the findings or case show never had been, delivery could not be made to the consignees. Then, as already seen, it became the duty of the carrier to warehouse the goods for the owner. Instead of this, *the defendant delivered them to a stranger without making any inquiry as to who or what he was, simply upon his inquiring if such goods for Wilson & Co. had arrived, and upon being informed that they had, saying that he wanted them."* (Italics ours.)

The last sentence contains the true ground for the decision in the *Price* case and clearly differentiates it from the case at bar. In the former case there was no delivery according to the expressed intention of the shipper. The court brushed aside the contention of the defendant that the plaintiff intended the goods to be delivered to the writer of the order, by saying: " He did not consign them to the writer of any order, but to Wilson & Co. This is the only evidence of his intention as to the persons to whom delivery should be made." (p. 222.)

In the instant case there is no evidence that the plaintiff had

manifested its intention to the carrier to deliver the goods to William Evans, a reputable grocer, as such, who was rated by Dun's Commercial Agency. Its expressed intention as indicated to the carrier was to deliver it to a man, William Evans, who had a place of business at No. 4922 Fairmount avenue. This it did, and whether it made the delivery at its terminal or at the indicated address is, under the facts of the case and the findings of the court below in the first cause of action, immaterial; nor is it material that William Evans was an assumed name of the consignee. If William Evans had used the name of a non-existent firm or corporation like William Evans & Co., and had obtained delivery at the terminal although he was the original writer of the order signed " William Evans & Co.," the case would have been analogous to the *Price* case, and we would then have been constrained to hold, following this authority, that in the absence of a principal whom the so-called agent purported to represent, his agency was of no effect, and we would have refused to treat him as the *alter ego* of the fictitious principal, or to have deemed delivery to him as a compliance with the consignor's instructions. If, on the other hand, William Evans had used the name of an existent firm or corporation, which had not authorized him to act as its agent, then, too, delivery to him, in view of the fraudulence of the agency, would have been an act of negligence of the carrier, even though the original order to the consignor was given by the identical person posing as such agent. (*Security Trust Co. v. Wells, Fargo & Co.*, 81 App. Div. 426; affd., 178 N. Y. 620.) But as the elements of a fictitious principal or of a fraudulent agency are lacking here, it is clearly distinguishable from our leading Court of Appeals case under discussion. And in arriving at this conclusion we do not deem it necessary to carry the doctrine to the limits extended by the Massachusetts line of cases, beginning with *Samuel v. Cheney* (135 Mass. 278) and ending with the recent case of *Myers v. American Railway Express Co.* (243 id. 390). Indeed, the Appellate Division in *Security Trust Co. v. Wells* (*supra*) in citing the authority of the *Price* case, referred with approval to *Pacific Express Company v. Shearer* (160 Ill. 215) in which the Massachusetts case of *Samuel v. Cheney* is criticised.

In the light of this it may be well to add some observations on the effect of the decisions in the *Pacific Express Company* case and in *American Express Company v. Fletcher* (25 Ind. 492), the results in which on first glance might seem to support the plaintiff's contention. While the latter presents a state of facts somewhat different from the case at bar, it was cited with approval in the *Price* case; on the other hand, the Illinois case embodies a situation

**122** Fox River Butter Co. *v.* Lightning Motor Line, Inc.

Appellate Term, First Department, May, 1925.          [Vol. 125

closely similar to the Indiana case. Although these cases were not entirely necessary to the decision of the respective New York authorities cited here, the discussion of principles therein contained is advisable, in order to determine whether they should compel us to modify the result arrived at in this case.

In *American Express Company* v. *Fletcher* a person claiming to be J. O. Riley came to a telegraph operator who was also agent of the express company, and presented a dispatch to be forwarded to the plaintiffs, signed " J. O. Riley," requesting them to send $1,900, which the operator sent through. In due time the operator, in his capacity as express agent, received a package addressed to J. O. Riley, whereupon the same person who had sent the dispatch presented himself and demanded the package, which was delivered to him. It turned out that this person was not J. O. Riley, but a swindler, and it was held that the express company was liable to the plaintiff for the money. While it did not appear as to whether J. O. Riley was a fictitious person (the case having been decided on the pleadings), Judge Grover in the *Price Case (supra)*, commenting upon this state of facts, infers that he was not, as the plaintiff would not be likely to forward that amount of money to a person unknown to him; and he interpreted the Indiana case as holding that no right to the package was acquired by the swindler by sending a dispatch therefor in the name of another. The latter decision, as well as the one in *Pacific Express Company* v. *Shearer*, in which there was a parallel state of facts, except that it was brought out at a trial, is clearly distinguishable from the case before us. In these two cases the courts substantially ruled that the carriers had not delivered in accordance with the expressed intention of the senders. While it is true that they had turned over the package to the person who had sent the telegram, the senders intended delivery to business correspondents with whom they had had previous dealings and under whose names the swindlers had masqueraded. It cannot be said that the senders were negligent in not verifying the authenticity of the dispatches. Their directions to the carriers were clear; to deliver to honest business men with whom the senders had had other business relations, and the carriers in allowing themselves to be imposed upon by swindlers, failed in the duty imposed upon them by law, in not requiring proper evidence of identity to insure delivery to the persons intended by the senders. In this case, however, the carrier delivered in accordance with the express direction of the shipper, to William Evans, 4922 Fairmount avenue, Philadelphia. Responsibility for the imposture practiced upon the plaintiff by a swindler, who made it believe that he was William Evans, a grocer listed in Dun's rating book, cannot be

fastened upon the carrier, in the absence of all evidence that it knew that plaintiff intended to consign the goods to " William Evans, a reputable grocer," who was fairly well rated. The carrier, while strictly responsible for delivery to the proper person (*Furman v. Union Pacific R. R. Co.*, 106 N. Y. 579), is not an insurer against frauds upon the shipper practiced by a consignee.

There being nothing in the *Price Case* (*supra*) or in the reasoning there adopted to support the plaintiff's contention, the judgment of the lower court must be reversed and the complaint dismissed.

Judgment reversed, with thirty dollars costs to appellant, and complaint dismissed as to both causes of action on the merits, with costs.

All concur; present, BIJUR, WAGNER and LEVY, JJ.